In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00100-CR
______________________________


JIMMY DEE WILSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 0317304


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Jimmy Dee Wilson was convicted of murder for killing Butch Monday, the husband of the
woman with whom Wilson had been having an affair for at least five years. Wilson was sentenced
to sixty years' imprisonment. On appeal, he complains of various statements made by the State
during closing arguments and the trial court's rulings on Wilson's objections to such statements;
failure of the court to exclude witness testimony; the sufficiency of the evidence; the trial court's
charge to the jury; and the admission of evidence of bad acts or extraneous offenses. We affirm. 
I.         FACTUAL BACKGROUND
            Wilson had been having an affair with Terri Monday for, in his estimation, seven years; in
hers, five. Terri was experiencing problems with her husband, Butch, whom Terri said, "wasn't there
emotionally." At first, Wilson and Terri tried to keep their affair secret from Butch, but within a year
or two, he became aware of it; from that point, Wilson and Terri did not attempt to keep their
relationship secret from Butch, and there were numerous instances of cross words and aggressive
behavior between Wilson and Butch. Terri also testified that Wilson, on several occasions, talked
about what their life would be like were Butch not "in the picture." There was some evidence
Wilson coveted Butch's income-generating chicken houses. Terri also said Wilson wanted a job
driving a truck for Terri's father's company. 
            On August 25, 2003, Terri was at Wilson's home in Hopkins County. As he had many times
in the past, Butch arrived and parked his truck in front of Wilson's house, and Terri went out to talk
to Butch. Butch had been drinking beer (his autopsy showed a blood alcohol content of 0.12). 
Although Terri testified explicitly that Butch had never struck her or been physically abusive, on this
date, Butch grabbed her, threw her to the ground, kicked her, slapped her, called her a whore, and
pushed her, and Terri struck her eye on the mirror of her car. 
            Observing this, Wilson made a 9-1-1 call to local law enforcement. He had made calls to
report Butch as trespassing on previous occasions. According to Wilson, he stood in front of a
window watching Butch assault Terri. Wilson said he feared for his safety and that of Terri, and held
a shotgun. Terri testified that, despite Butch's pushing and kicking her, and abusive language toward
her, she did not fear for her safety. Butch, still outside Wilson's house, approached a window to
Wilson's bedroom, through which Wilson was watching Butch. Wilson testified Butch came to the
window and slapped the window or frame, and shouted "Boo." Wilson claimed the shotgun
accidentally discharged when Butch startled him. Butch was found on the ground beneath the
window in a large pool of blood. Wilson's shotgun discharged through the window and screen, and
caused a fatal wound in Butch's neck. 
II.       STATE'S ARGUMENT—REQUIREMENTS OF SUDDEN PASSION
            In Wilson's first point of error, he complains the trial court erred in failing to sustain an
objection Wilson made to the State's closing argument at the punishment stage of Wilson's trial. 
Wilson claims that, because of such alleged error, the State was able to misstate the law on the issue
of sudden passion. Wilson also claims this purported misstatement by the State was contrary to the
law set forth in the trial court's charge. Regarding his claimed punishment defense of sudden
passion, the jury was required to find, by a preponderance of the evidence, whether Wilson killed
Butch while under a "passion directly caused by and arising out of provocation" from Butch or
another acting with him, and said passion arose "at the time of the offense and [was] not solely the
result of former provocation." See Tex. Pen. Code Ann. § 19.02(a)(2) (Vernon 2003).
            During the State's closing argument at punishment, the State drew objections by saying that,
in considering the issue of whether Wilson had acted under "sudden passion,"


 such a finding must
be based on intentional or knowing acts, and not merely accidental.
            In Wilson's brief, after providing background information on the availability of the sudden
passion issue as mitigation at the punishment phase, he asserts, "[t]he argument was incorrect and
a statement of law contrary to the court's charge which is recognized as error." Wilson provides no
authority or analysis for this point. 
            Wilson appears to complain the State misstated the law and the court's charge by arguing that
any finding of sudden passion had to be found by the jury to be intentional or knowing, and could
not be accidental. As the Texas Court of Criminal Appeals has stated, with "sudden passion as a
punishment issue, the defendant's intent to kill has already been affirmatively resolved by the jury
and is no longer relevant. Since the defendant killed intentionally, the issue at punishment is
whether he did so in sudden passion." Trevino v. State, 100 S.W.3d 232, 240 (Tex. Crim. App.
2003). 
            The portion of the court's charge relative to this issue contained the definitions of "adequate
cause" and "sudden passion" provided in the Texas Penal Code.



            As in Trevino, when Wilson was convicted of murder, the issue of his intent to kill Butch was
finally resolved. The jury, having already found the defendant acted intentionally and knowingly,
that issue was resolved and, therefore, it was irrelevant at the punishment stage. Id. However, there
was no objection the argument was irrelevant. The objection was "that is a misstatement of the law
. . . and that there is nothing in the charge that requires an intentional and knowing act when acting
in sudden passion." During the proceeding, the State correctly stated that sudden passion is only
submitted to a jury "because there's a finding that it was intentional and knowing." The jury had
resolved the matter of intent at the guilt/innocence phase; there was no matter of intent before it
during the punishment phase. 
            Even if the argument was irrelevant and if a proper objection had accompanied the argument,
it could not be harmful to Wilson because the issue of Wilson's acting intentionally and knowingly
was already established. See id.; see also Tex. R. App. P. 44.2. 
III.      STATE'S ARGUMENT ASKING JURY TO SEND A MESSAGE
            Wilson complains about the State's plea, in closing argument at punishment, that the jury
send a message to the community. Prosecutorial jury argument is permissible if it falls within one
of the following categories: (1) summation of the evidence; (2) reasonable deduction drawn from
the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. 
Shannon v. State, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996); Albiar v. State, 739 S.W.2d 360,
362 (Tex. Crim. App. 1987).
            It is proper for a prosecutor to ask the jury to send a message that the community will not
tolerate violence. McGee v. State, 774 S.W.2d 229, 240 (Tex. Crim. App. 1989). However, a
prosecutor may not make an appeal based on unproven sentiments of the community. See
Pennington v. State, 171 Tex. Crim. 130, 345 S.W.2d 527, 528–29 (1961). A prosecutorial
argument is improper if it induces the jury to reach a particular verdict based on the demands,
desires, or expectations of the community. Cortez v. State, 683 S.W.2d 419, 421 (Tex. Crim. App.
1984). ("Now, the only punishment that you can assess that would be any satisfaction at all to the
people of this county would be life" held to be improper argument). As the Cortez court said, an
argument from the State is acceptable if it asks "the jury to be the voice of the community," but not
if it asks "the jury to lend its ear to the community." Id.



            Wilson complains of the following argument by the State's attorney: "You [twelve] get to
decide, here in Hopkins County, what happens when you kill somebody under these circumstances." 
The State, following Wilson's overruled objection, stated, "Of course you're going to send a
message," and then finally, "And we cannot forget the community as a whole, even though they want
you to." 
            The State's argument was not improper. Wilson had been convicted, and the issue before the
jury at the time of the complained-of arguments was punishment. As stated above, a plea for law
enforcement may include an argument to send a message that violations of law will be punished
appropriately. The State asked the jury to send a message on behalf of the members of Hopkins
County, stating how violent criminals would be punished in that community. The State was not
asking the jury to "lend its ear to the community," but rather to be the voice of the community. See
Cortez, 683 S.W.2d at 421. Finding no merit to this point, we overrule it. 
IV.      FAILURE TO EXCLUDE WITNESSES
            Wilson complains that the State's two punishment witnesses had been in the courtroom
during the guilt/innocence phase, and despite the trial court's implementation of Tex. R. Evid. 614
at the start of trial, these two witnesses were allowed to testify during the punishment phase. 
            The sequestration rule is no longer discretionary with the trial court. Moore v. State, 882
S.W.2d 844, 848 (Tex. Crim. App. 1994). However, if error is shown, it is a violation of an
evidentiary rule, is nonconstitutional, and will be disregarded unless it affected the appellant's
substantial right. Tex. R. App. P. 44.2(b).
            Shirley Ballard, Terri's mother, testified for the State at punishment. She testified favorably
about Butch's character and the difficulties and pain his death had brought into Ballard's life. 
Morgan Warren, daughter of Butch and Terri, was the other punishment witness for the State. She
testified Butch was a good father and provider. Wilson was also allowed to proffer testimony from
a witness who had sat through the guilt/innocence phase: his thirteen-year-old daughter, who said
that, the day before her testimony, a cousin had died; and combined with her father's conviction, she
had endured two tragedies in the past day. The child told the jury she needed her father. 
            Article 36.03 of the Texas Code of Criminal Procedure provides that a trial court may
exclude a close relative of the deceased victim from the courtroom only if the court determines that
the testimony of the witness would be materially affected if the witness hears other testimony at trial. 
Tex. Code Crim. Proc. Ann. art. 36.03 (Vernon Supp. 2005). Warren was the daughter of the
deceased and qualified as a "close relative of a deceased victim."


 The trial court was without
authority to exclude Warren unless the court determined her testimony would be materially affected
if she heard the other testimony at the trial. Id. No such showing was presented to the trial court. 
            Ballard was the mother-in-law of the deceased. Traditionally, determining harm or prejudice
by the witness' violation of Tex. R. Evid. 614 is based on whether the witness' presence during other
testimony resulted in harm to the defendant. Webb v. State, 766 S.W.2d 236, 240 (Tex. Crim. App.
1989); Guerra v. State, 771 S.W.2d 453, 474–75 (Tex. Crim. App. 1988). Injury to the defendant
is shown when two criteria are met: (a) whether the witness actually conferred with or heard
testimony of other witnesses, and (b) whether the witness' testimony contradicted testimony of a
witness from the opposing side or corroborated testimony of a witness with whom he or she had
conferred or heard. Webb, 766 S.W.2d at 240. 
            Wilson complains that the two State's punishment witnesses testified to Butch's "lack of
violent tendencies, hardworking nature, and several other facts that were part of the guilt-innocence
testimony. Further, they were allowed to testify about victim-impact."
            Wilson provides no evidence Ballard conferred with other witnesses. Nor does he offer
evidence, and we can find none, that Ballard's brief testimony contradicted any testimony offered by
Wilson. While it can be said that, to an extent, Ballard's testimony was a favorable characterization
of Butch and corroborated the testimony of Terri, there is no evidence any of this actually harmed
Wilson. It has been held that there will seldom be harmful error where a witness who remained in
the courtroom during guilt/innocence testifies at punishment. Upton v. State, 894 S.W.2d 426, 428
(Tex. App.—Amarillo 1995, pet. ref'd). Even if Ballard should have been excluded from hearing
the testimony of the other witnesses, we find any such violation of Tex. R. Evid. 614 did not affect
Wilson's substantial rights and should be disregarded. See Russell v. State, 155 S.W.3d 176, 181
(Tex. Crim. App. 2005). This point is overruled. 
V.        STATE'S GUILT/INNOCENCE ARGUMENT—MENTIONING PUNISHMENT
            Wilson claims the State made an improper statement during its rebuttal argument at the close
of the guilt/innocence phase of the trial. At the end of its final closing argument, the State said,
"Find him guilty. He is guilty. And we'll determine what his punishment ought to be later." Wilson
objected; the trial court instructed the jury to disregard the State's comment, and then denied
Wilson's request for a mistrial. 
            First, we point out that, in the State's first portion of its argument, the State ended its
argument with "the Defendant is guilty of murder. And we'll deal with what ought to happen about
that later on." Wilson did not object to this argument, which is very similar to the one complained
of—it requests the jury to find the defendant guilty and suggests another process will occur afterward
to determine "what ought to happen about that later on." To preserve a complaint about improper
jury argument, a defendant must object each time the impermissible argument is made, or the
complaint is waived. See Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). 
            However, even if the State's remark was improper, the jury was instructed by the trial court
to disregard it. We have previously discussed in this opinion the four permissible areas of jury
argument. Should the argument be found to have been improper, we examine for harm, balancing
three factors: 1) the severity of the misconduct (the magnitude of the prejudicial effect of the
prosecutor's argument); 2) measures adopted to cure the misconduct (the efficacy of any cautionary
instruction by the court); and 3) the certainty of conviction absent the misconduct (strength of the
evidence supporting the conviction). See Tex. R. App. P. 44.2(b); Mosley v. State, 983 S.W.2d 249,
259 (Tex. Crim. App. 1998). We will examine these factors.
            (1) The severity of the misconduct. Wilson cites cases stating that punishment should not
be discussed until the punishment hearing, including Garcia v. State, 887 S.W.2d 862, 877 (Tex.
Crim. App. 1994). In Garcia, the defense attorney told the jury that, if it convicted the defendant,
"they want you to kill him." In McClure v. State, 544 S.W.2d 390, 391 (Tex. Crim. App. 1976), the
State advised the jury, "You know the most you can get for involuntary manslaughter is twenty
years" and in Bruton v State, 921 S.W.2d 531, 535 (Tex. App.—Fort Worth 1996, pet. ref'd), the
attorney argued that "aggravated robbery is a first degree felony. Robbery is a second degree felony." 
Courts have found such arguments improper because they encourage the jury to convict on the basis
of the amount of punishment rather than on the facts supporting guilt. Id. at 536. None of the
egregious conduct in the cited cases is present. We conclude that the brief mention of punishment
was not severe misconduct in this instance. 
            (2) Measures adopted to cure the misconduct. Here, the trial court promptly sustained the
objection and instructed the jury to disregard the statement and not consider it for any purpose. The
jury is presumed to follow instructions, and the efficacy of the trial court's instruction to disregard
is likewise presumed. See Livingston v. State, 739 S.W.2d 311 (Tex. Crim. App. 1987); Carter v.
State, 614 S.W.2d 821 (Tex. Crim. App. [Panel Op.] 1981) (an instruction to disregard normally
cures error, except in extreme cases where it appears that the evidence is clearly calculated to inflame
the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the
impression produced on the jurors' minds). 
            (3) Certainty of the conviction without the misconduct. We address the legal and factual
sufficiency of the evidence in another point and have determined there is ample evidence to convict. 
There was no dispute Wilson shot and killed Monday. The evidence discussed in the sufficiency
points shows that the State's case was strong. This brief reference by the State to the issue of
punishment was a small, unnecessary particle of refuse in a sea of incriminating evidence. 
            We overrule this point of error.
VI.      SUFFICIENCY OF THE EVIDENCE
            Wilson claims the evidence was legally and factually insufficient to support his conviction. 
            A.        Legal Sufficiency
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the reviewing court to view the relevant
evidence in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all of the evidence in the
record, both direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999). 
            Wilson did not deny shooting Butch with a firearm and causing his death. At trial, Wilson
raised self-defense as a defensive theory. There was substantial evidence contrary to this position. 
About a month before the shooting, Wilson told a police officer who was responding to a trespass
by Butch on Wilson's property, that Wilson would kill Butch the next time he came on Wilson's
property and that the officer should bring a body bag. Investigator Jim Wright with the Hopkins
County Sheriff's Office testified that the scene indicated a shot was fired in a downward direction
from Wilson's house out a window and that the measurements did not "add up" with Wilson's
explanation he had had the rifle on his hip. Wright said the gun would have had to have been held
at a higher angle, held at the shoulder, to travel through the window and hit Butch where he was shot. 
Wilson told Wright at the scene both doors to the house were locked during the episode. Butch
presented no immediate threat to Wilson, according to Wright; Butch, approximately 236 pounds,
would have had to have climbed through a window to get to Wilson. The medical examiner testified
the shot went downward, front to back, and in a slightly left to right direction. Texas Ranger Philip
Kemp also said Wilson told him he had the gun with the stock held by his hip; Kemp said this
positioning of the rifle was not consistent with the scene—the condition of the window screen, the
broken window glass, and the window. Terri testified she had heard Wilson say he would kill Butch
more than twenty times; on ten occasions, Wilson told her that, if Butch was not in the picture, she
would not have to divorce or share her half of the community property; Wilson could put his horses
on her land; and he could get a job with her father's trucking business. Terri said that, on numerous
occasions, Butch would come to Wilson's door; Wilson "always" got his shotgun and told Terri if
Butch came in the house, he would shoot Butch; Terri said Wilson did not appear to be afraid of
Butch. On a prior occasion, Wilson went to Butch's chicken house, where Wilson brandished or
displayed a pistol and told Butch that, if Wilson could not have Terri, no one would. On another
occasion, when Terri was at Wilson's house, Butch knocked on the door and asked both Terri and
Wilson to come out and talk. Wilson got the shotgun and pointed it at the door, and Terri stood at
the door to prevent Wilson from shooting. Wilson got mad at Terri and told her that, if Butch would
have come through the door, "[Wilson] could have shot him, and it would have been over." 
            A rational trier of fact could have found all the essential elements of the crime of murder
beyond a reasonable doubt. We deny the legal sufficiency point of error.
            B.        Factual Sufficiency
            In a factual sufficiency review, the appellate court views all the evidence in a neutral light
and determines whether the evidence supporting the verdict is too weak to support the finding of
guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146 S.W.3d 654,
664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App. 2004)). 
            Wilson's argument is that "the only evidence before the jury was that Appellant was afraid
for himself and Mrs. Monday's lives, and that Mr. Monday caused the circumstances that resulted
in his death." However, there was evidence that Butch harassed Wilson, that Wilson had made
threats to and about Butch and that Wilson coveted Butch's property and wanted to work for Terri's
father. Wilson testified that he was afraid of Butch; that he felt Butch had seriously or was about
to seriously hurt Terri; and that, on one occasion, Wilson had spoken to Butch with a .40 Glock
pistol on Wilson's lap, which he denied pointing at Butch. Wilson maintained that, when Butch
approached Wilson's window, Butch slapped the window and said, "Boo," which scared Wilson, and
the shotgun accidentally went off. All of the evidence discussed above is sufficient for a rational jury
to find that Wilson intended to kill Butch; and the evidence was neither too weak to support the
finding of guilt beyond a reasonable doubt, nor was there evidence contrary to the verdict so strong
as to preclude the beyond-a-reasonable-doubt standard having been met. The evidence is factually
sufficient to support Wilson's conviction. We overrule this point. 
VII.     ADEQUACY OF COURT'S CHARGE ON APPARENT DANGER

            Wilson claims the trial court erred in failing to instruct the jury on the doctrine of apparent
danger. Wilson made written requests for jury charge instructions, one of which would have
contained language that a person "has a right to defend his life and person from apparent danger. . . ." 
The trial court refused this proposed language; the charge given the jury included an instruction on
self-defense and contained definitions of "reasonable belief," "deadly force," and an instruction on
when a person is justified in using deadly force. 
            In Valentine v. State, 587 S.W.2d 399, 401 (Tex. Crim. App. [Panel Op.] 1979), the Texas
Court of Criminal Appeals held that the concept of apparent danger was properly presented to the
jury where the charge instructed that the defendant's conduct would be justified if he reasonably
believed that the deceased was using or attempting to use unlawful deadly force against the
defendant at the time of the shooting. Id.


 The court also defined the term "reasonable belief."


 In
Valentine, the Texas Court of Criminal Appeals held that, by defining the term "reasonable belief"
as it did, the court instructed the jury that a reasonable apprehension of danger, whether it be actual
or apparent, is all that is required before one is entitled to exercise the right of self-defense against
his or her adversary. Id. 
            The jury was adequately charged in the applicable law and was able to consider the conduct
of both Wilson and Butch. This point is overruled. 
VIII.   EXTRANEOUS OFFENSES / BAD ACTS
            Wilson complains of the admission of testimony or evidence concerning the following bad
acts: that he committed telephone harassment; sold his prescription Vicodin to Terri; carried a
handgun in his truck; "flipped off" children; and fraudulently received worker's compensation
benefits, though able to work. 
            A.        Telephone Harassment
            After the first question concerning the subject of telephone harassment was asked, a hearing
was held outside the presence of the jury and the trial court sustained Wilson's objection to that line
of questioning, and instructed the jury to disregard the previous question on the subject. The jury
is presumed to have followed the trial court's instructions. Livingston, 739 S.W.2d 311; Carter, 614
S.W.2d 821. Wilson did not request a mistrial. He has thus failed to preserve error as to this matter. 
             B.        Drug Sales
            During the State's direct examination of Terri, the State asked why, at the time of Butch's
death, she had been considering leaving him for Wilson. Terri answered, "Jimmy was selling me
Vicodin for about three years." Wilson lodged no objection, and the State did not pursue the subject;
rather, the State turned its line of questioning to the nature of the relationship between Terri and
Wilson. During Wilson's case-in-chief, he presented a medical doctor who testified about Wilson's
colon surgery and resultant physical fragility regarding any direct blow to his abdomen, which could
lead to such consequential injuries as a ruptured small intestine, bleeding, or injury to his spleen. 
On cross-examination, the State questioned this physician about a patient who was prescribed
Vicodin as pain medication and then sold that medication to another person. The trial court
sustained Wilson's objections to this line of testimony. In the State's rebuttal case, Terri again
testified, at length, about her dependence on Vicodin, which she contended was encouraged and
fostered by Wilson continuing to give or sell her the pain medication. 
            In his brief, Wilson asserts the State failed to respond to Wilson's timely request for
notification of bad acts or crimes the State would attempt to adduce in its case-in-chief. From our
review of the record, the State does not appear to have supplied any formal notice of such evidence. 
However, Wilson made no objection to Terri's mention of Vicodin sales, and the State did not pursue
that topic in its case-in-chief. The State did not specifically ask Terri about drug sales from Wilson
and did not seek to expand this issue, injected by Terri, in front of the jury until cross-examination
of Wilson's witness, during the defense's case-in-chief and the State's rebuttal case. A defendant is
only entitled to pretrial notice of extraneous offenses or bad acts which the State would offer in its
case-in-chief, not any the State may adduce in cross-examination of defense witnesses, or in the
State's rebuttal case. Jaubert v. State, 74 S.W.3d 1, 4 (Tex. Crim. App. 2002).
            The trial court sustained Wilson's objections to the State's implications, cross-examining
Wilson's medical doctor, that Wilson sold his pain medication. However, in the State's case in
rebuttal, the trial court, over Wilson's running objection, allowed the State to question Terri
extensively about Wilson giving, then selling, her his prescription pain medication, Vicodin.


 Terri
testified she grew chemically dependent on the pills, sometimes taking as many as five a day. She
testified that sometimes Wilson would fill a prescription and she would immediately buy all of the
pills from him. She testified that, on other occasions, Wilson would only sell her three or four pills
at a time, in order to make her come see him more often. When she told him she wanted to go to a
rehabilitation facility to end her dependence, Wilson began giving, rather than selling, her the pills. 
            Wilson complains on appeal, as he did before the trial court, that this testimony constitutes
evidence of bad acts whose prejudicial value substantially outweighs any probative value the
evidence might have. See Tex. R. Evid. 403, 404(b). Trial courts are required to exclude evidence
when its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid.
403; Montgomery v. State, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990) (op. on reh'g). In making
this determination, the trial court should "consider the inherent tendency that some evidence may
have to encourage resolution of material issues on an inappropriate basis and should balance
carefully against it the host of factors affecting probativeness, including relative weight of the
evidence and the degree to which its proponent might be disadvantaged without it." Fuller v. State,
829 S.W.2d 191, 206 (Tex. Crim. App. 1992). 
          A trial court's decision in balancing these factors is reviewed under the abuse of discretion
standard and is disturbed on appeal only when the trial court's decision falls outside the zone of
reasonable disagreement. Montgomery, 810 S.W.2d at 391–92.
            Here, there was significant danger of Wilson being prejudiced by testimony he sold drugs to
Terri and used these drugs to manipulate and control her. The evidence has great potential to
impress the jury in some irrational but nevertheless indelible way. See Wyatt v. State, 23 S.W.3d 18,
26 (Tex. Crim. App. 2000). The State's proffered reasons to the trial court for the admission of this
line of testimony were a) that Wilson's injuries to his back were not as severe as he had asserted in
his testimony and b) that Terri was unable to resist Wilson and therefore cease her relationship with
him, where he prompted her to become dependent on a prescription medication, then continued to
supply her with that medication. 
            We find that any probative value in this line of testimony, allegedly to impeach a defensive
theory, is substantially outweighed by the likely prejudicial effect. The extent of any back pain
suffered by Wilson was not a fact of consequence and did not bear directly on the issue of whether
he shot Butch intentionally, in self-defense, or accidentally. Likewise, the extent of any
manipulation or control exerted by Wilson over Terri was not directly relevant to the ultimate issues
of the trial, and the prejudicial value of this testimony substantially outweighs any probative value. 
Further, this evidence was not necessary for the State to prove or disprove a fact of consequence. 
We find it was error to allow the State to pursue this line of testimony. 
            We now turn to a harm analysis. In our review of nonconstitutional error, we are to disregard
errors, defects, irregularities or variances that do not affect substantial rights of the accused. Tex.
R. App. P. 44.2(b). A "substantial right" is affected when the error had a substantial and injurious
effect or influence in determining the jury's verdict. Tex. R. App. P. 44.2(b); King v. State, 953
S.W.2d 266 (Tex. Crim. App. 1997). If, on the record as a whole, it appears the error "did not
influence the jury, or had but a slight effect," we must conclude that the error was not harmful and
allow the conviction to stand. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
          In order to properly conduct a harm analysis under Rule 44.2(b), we review the error as a type
of "Other Errors," and we must disregard the error unless it "affect[ed] [appellant's] substantial
rights." Tex. R. App. P. 44.2(b). For claims of nonconstitutional error, the Texas Court of Criminal
Appeals has held that "a conviction should not be overturned unless, after examining the record as
a whole, a court concludes that an error may have had 'substantial influence' on the outcome of the
proceeding." Burnett v. State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002). In other words, if we
have "a grave doubt" that the result was free from the substantial influence of the error, then we must
reverse. Id. The court has explained that "grave doubt" means that "in the judge's mind, the matter
is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." 
Id. at 637–38 (citing O'Neal v. McAninch, 513 U.S. 432, 433–36 (1995)). Thus, "in cases of grave
doubt as to harmlessness the petitioner must win." Burnett, 88 S.W.3d at 638.
            In considering harm, we must review the entire record to determine whether the error had
more than a slight influence on the verdict. See King, 953 S.W.2d at 271 (citing Kotteakos v. United
States, 328 U.S. 750, 776, (1946)); Reeves v. State, 969 S.W.2d 471, 491 (Tex. App.—Waco 1998,
pet. ref'd). If the court finds that the error did have more than a slight influence on the verdict, it
must be concluded that the error affected the defendant's substantial rights in such a way as to require
a new trial. Reeves, 969 S.W.2d at 491. If the court has grave doubts about the error's effect on the
outcome, the case must be remanded for a new trial. Id. Otherwise, the court should disregard the
error. Lopez v. State, 990 S.W.2d 770, 778 (Tex. App.—Austin 1999, no pet.); Reeves, 969 S.W.2d
at 491.
            We have previously summarized the evidence in this case. Wilson never denied shooting
Butch; the only issue was whether Wilson shot him in self-defense, defense of a third person, or if
the shooting was accidental. The jury was presented with testimony about the scene of the crime and
the analysis of whether the scene coincided with Wilson's statements that the shotgun discharged
accidentally. Wilson testified, and the jury was able to judge his credibility and demeanor. 
Considering the entire record before us, we cannot say we have grave doubts about the harmfulness
of this error on Wilson's substantial rights. The ultimate issue of this case was whether the jury
believed Wilson's defenses of accident, self-defense, and defense of a third person. We find the error
in admitting evidence of Wilson selling and giving prescription pain medication to Terri did not have
a substantial influence on the outcome of the trial, and accordingly overrule this point of error. 
            C.        Treatment of Terri's Children
            Terri testified Wilson would "cuss" and "flip . . . off" her children. A discussion at the bench
followed; Wilson's attorney said that, "if we're going to get into prior bad acts - - . . . then we've got
to object to that, Your Honor." The State's theory (at trial and on appeal) was that interaction
between Wilson and the victim's family was inseparable from conduct between Wilson and the
victim, and thus admissible under Tex. Code Crim. Proc. Ann. art. 38.36 (Vernon 2005).


 The trial
court sustained Wilson's objection and instructed the attorneys, "No, we shouldn't get into that at this
point, whatsoever. Okay." The general rule for presenting a complaint for appellate review is a
showing in the record (1) that the complaint was made to the trial court by a request, objection, or
motion that was timely and sufficiently specific to make the trial court aware of the grounds of the
complaint and (2) that the trial court ruled adversely (or refused to rule, despite objection). Tucker
v. State, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999). To reach the level of an adverse ruling, if
the objection is sustained, counsel must then ask for an instruction to disregard. If the instruction
is given, counsel must then move for a mistrial. Nethery v. State, 692 S.W.2d 686, 701 (Tex. Crim.
App. 1985). It appears from the record the trial court sustained Wilson's objection, and Wilson did
not ask for an instruction to disregard or for a mistrial. Wilson has not preserved this complaint. 
            D.        Carrying a Handgun
            Regarding Wilson's complaint that the trial court admitted evidence Wilson carried a
handgun, we assume he refers to Terri's testimony, related to her by Wilson, that on one occasion
Wilson went to Butch's chicken houses, brandished a pistol, and told Butch that, if Wilson could not
have Terri, no one would. Wilson posed no objection to this testimony. Further, such conduct
would clearly fall in the purview of Tex. Code Crim. Proc. Ann. art. 38.36. No error is shown. 
            E.        Worker's Compensation Benefits
            Wilson complains about the State eliciting testimony suggesting Wilson received workers
compensation benefits from an injury in an oil field, yet continued to work as a truck driver or
breaking horses. Wilson made no objections to this line of testimony. No error was preserved.
            Having found no merit in Wilson's points of error, we affirm the trial court's judgment. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          October 19, 2005
Date Decided:             November 3, 2005

Publish