In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00198-CR


______________________________




DON WAYNE DUNCAN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 5th Judicial District Court


Bowie County, Texas


Trial Court No. 04F0338-005




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 A jury found Don Wayne Duncan (Don) guilty of shooting the complainant, Danny K.
Duncan (Danny), Don's brother. The trial court assessed Don's punishment at fifteen years'
imprisonment. Don now appeals, raising two points of error. We affirm.

I. Evidentiary Sufficiency

 In his first point of error, Don contends the evidence is both factually and legally insufficient
to support his conviction. Contained within this point is an argument that the evidence is insufficient
to sustain the jury's implicit rejection of Don's self-defense theory. Challenges to the legal and
factual sufficiency of the evidence are separate issues, each requiring a different standard of review. 
Challenges to both the factual and legal sufficiency of the evidence should not be briefed as a single
issue. "In recent years, this Court has repeatedly warned litigants not to combine multiple issues into
a single point of error, thereby risking our overruling the composite point of error as multifarious." 
Dickey v. State, 189 S.W.3d 339, 341 (Tex. App.--Texarkana 2006, no pet.) (referencing Newby v.
State, 169 S.W.3d 413, 414 (Tex. App.--Texarkana 2005, no pet.); Harris v. State, 133 S.W.3d 760,
764 n.3 (Tex. App.--Texarkana 2004, pet. ref'd); Parra v. State, 935 S.W.2d 862, 875 (Tex.
App.--Texarkana 1996, pet. ref'd)). Duncan's issue is multifarious. However, our examination of
the evidence, detailed below, shows it is sufficient to satisfy both legal and factual sufficiency
requirements. (1)

 A. Don Letterman

 Don Letterman testified that, on March 29, 2004, he and his daughter, Ashley Letterman,
were traveling in the DeKalb area of Bowie County when he observed two men in the front of
someone's yard. Letterman observed one man beating the other with what appeared to be a baseball
bat or other club-type object. Letterman testified that the man being beaten had been shot and was
running in a "backwards manner." Letterman called 9-1-1 and then left his vehicle to assist the
person being attacked. Letterman saw nothing in the complainant's hands as the former ran toward
the location of Don and the complainant. Letterman saw the complainant fall, after which Don
continued to hit the complainant with the bat. Letterman saw Don move the bat from his right hand
to his left hand and then shoot the victim. At the time of the shooting, Letterman was still on the
telephone with the 9-1-1 operator, to whom Letterman described both the shooting and the shooter's
clothing and appearance. Don then struck the complainant a few more times with the bat, walked
away from the scene, sat down on a barrel located about 100 feet away, and began smoking a
cigarette while Letterman was on the telephone with the 9-1-1 dispatcher. Letterman then attended
to the complainant's injuries. 

 While trying to stop the complainant's bleeding, Letterman discovered the knife located in
a leather sheath attached to his belt. Letterman had not previously seen the complainant displaying
a knife. Letterman unsnapped the sheath, retrieved the knife, and then used it to make a tourniquet. 
Law enforcement officials arrived less than ten minutes later. Letterman pointed out Don to the
police, who then went to detain the suspected shooter. Meanwhile, Letterman saw another man (who
turned out to be Don's son, Derrick) come from around the side of a building; this man had a knife,
but Letterman was able to stop the man and take the knife away. 

 During the ordeal, Letterman did not hear or see the complainant threaten Don in any way. 
Letterman opined that he believed the complainant had been trying to flee from Don. Letterman
identified Don as the person who shot and beat the complainant. 

 B. Ashley Letterman

 Ashley is Letterman's daughter and was traveling with her father March 29, 2004. As Ashley
and her father were traveling on Highway 82 from DeKalb, Texas, toward their home in Hope,
Arkansas, Ashley looked to her left and "saw some people in the ditch and it looked like they were
maybe playing or talking and one of them had a baseball bat in his hand." Ashley saw one man try
to run away, but he fell to the ground; the other man (who was wielding the baseball bat) then began
hitting the first man. She pointed out the assault to her father. Ashley then saw the assailant switch
the baseball bat to his other hand and shoot the complainant with a pistol that he had pulled from
somewhere. The assailant then continued hitting the complainant with the bat. By this time, the
complainant was on his back in the ditch in a defensive position but still trying to crawl away. The
assailant eventually broke off the assault, walked over to a nearby barrel, and began smoking a
cigarette. Ashley also observed the assailant place his gun down on a toolbox. 

 Ashley also testified about another man running at her father with a knife, but her father was
able to subdue and disarm this person. 

 At no time during the assault did Ashley witness the complainant display a knife or other
weapon. Nor did Ashley hear the complainant threaten his assailant in any way. At trial, Ashley
identified Don as the person who assaulted the complainant. 

 According to Ashley's testimony, the complainant suffered a gunshot wound to his leg, which
was bleeding. Letterman attended to the complainant's wound by removing the complainant's belt
and making a tourniquet. She also saw her father unsheath the complainant's knife and use it to cut
the complainant's pant leg away from the wound. 

 C. Tracy Wade

 Tracy Wade is the custodian of medical records for Christus St. Michael, a hospital located
in Texarkana, Texas. Danny's medical records were admitted through Wade's testimony and are part
of the record on appeal. These records show that Danny K. Duncan was admitted to the hospital
March 29, 2004, after receiving a gunshot wound in his leg. The medical records indicate the patient
told emergency care providers that he had been shot by his brother. The doctors were able to
partially repair the damaged artery, but Danny's rehabilitation was slow. He was ultimately
discharged from the hospital April 3, 2004, and was able to walk at that time. 

 D. Danny Duncan

 Danny testified that he was shot by his brother, Don, March 29, 2004. Before being shot,
Danny had been mowing his grass. Don approached Danny and was carrying a baseball bat. Don
then swung the baseball bat at Danny. Don later produced a pistol and shot at Danny. The first shot
missed Danny's foot. Danny then fell, after which Don advanced on Danny and began hitting him
with the baseball bat. Don subsequently shot Danny in his leg. As a result, the major artery in
Danny's leg was severed, he was hospitalized for five days (including one day in intensive care after
having had to undergo surgery), and he lost a nerve in his leg. 

 Danny testified that he never pulled the knife he was wearing from its sheath. He also told
the jury he had never made any threats toward either Don or Derrick on the day in question. 

 On cross-examination, Danny testified only two shots were fired on the day in question. We find the evidence to be legally and factually sufficient to support the jury's verdict of guilt
and an implicit rejection of Don's self-defense argument. Don's first point of error is overruled. 

II. Closing Argument

 In his next point of error, Don asserts the State made an improper closing argument. The
Texas Court of Criminal Appeals has said there are four proper areas of jury argument: 
"(1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that
evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law enforcement." 
Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). Should a jury argument be found to
have been improper, we are to examine the record for harm, balancing three factors: "1) the severity
of the misconduct (the magnitude of the prejudicial effect of the prosecutor's argument); 2) measures
adopted to cure the misconduct (the efficacy of any cautionary instruction by the court); and 3) the
certainty of conviction absent the misconduct (strength of the evidence supporting the conviction)." 
Wilson v. State, 179 S.W.3d 240, 249-50 (Tex. App.--Texarkana 2005, no pet.) (citing Tex. R. App.
P. 44.2(b); Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

 Don's counsel argued Lonnie Johnson, a deputy with the Bowie County Sheriff's Department,
had testified that he did not know the parties involved and asked the jury, "How did Lonnie Johnson
know, how did the dispatcher know to tell Lonnie Johnson that there are family members involved?" 
In its final jury argument, the State's counsel responded as follows: "I'll close on this last point that
defense made as to why there was the 911 call and the reference to family violence. The victim was
right there, he told him. There's no question in my mind." The objection of "no evidence to support
that contention" was overruled. Don now argues that this statement injected a new fact for which
there was no testimony: "that being that Danny Duncan told Don Letterman that his brother shot
him." 

 The record does not contain any testimony from either Letterman or Danny that he told the
former about the latter's specific familial relationship with Don. However, Johnson did testify that
he was dispatched to the site of the shooting March 29, 2004, regarding a "[f]amily violence, shots
fired" call. Since Letterman had already testified that he had seen Don shoot Danny and was in the
process of calling 9-1-1 for assistance at the time of the shooting, it would be a reasonable deduction
from the testimony of Letterman and Johnson that Letterman had informed the 9-1-1 dispatcher that
his emergency involved domestic violence, a fact which could have been relayed by Danny himself. 
Thus, the State's argument was a permissible deduction from the evidence and an answer to opposing
counsel's argument. We overrule Don's second point of error.

III. Conclusion

 For the reasons stated, we affirm the trial court's judgment.



 Jack Carter

 Justice


Date Submitted: December 8, 2006

Date Decided: December 13, 2006


Do Not Publish
1. We use the traditional standards of review for legal and factual sufficiency as stated in
Jackson v. Virginia, 443 U.S. 307 (1979), and Watson v. State, No. PD-469-05, 2006 Tex. Crim.
App. LEXIS 2040 (Tex. Crim. App. Oct. 18, 2006).