Opinion issued May 24, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00462-CR

———————————

Charles Leneil Brown, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 339th Judicial District Court 

Harris County, Texas



Trial Court Case No. 1178042

 



 

MEMORANDUM OPINION

          Appellant
Charles Leneil Brown pleaded not guilty to the first degree offense of
aggravated sexual assault.  See Tex.
Penal Code § 22.021 (West Supp. 2011).  The jury found him guilty and the court assessed his
punishment at fifty years in prison.  On
appeal, Brown argues that the trial court erred in admitting evidence of two
extraneous offenses and in failing to give the jury proper limiting
instructions regarding the extraneous offense evidence.  Brown also argues that he was harmed by an
improper argument the State made to the bench during the punishment phase of
trial.  We affirm.  

Background

          During his opening statement, Brown’s attorney denied that Brown
forced complainant G.J. to engage in sexual acts with Brown.  Brown’s attorney asserted that G.J. and Brown
had consensual sex, and it was only after Brown stole money from G.J. that she
decided to claim the encounter was a sexual assault.  

G.J. testified that on December 18,
2007, Brown approached her in a food mart near her home.  According to G.J., Brown asked her for
directions to a strip club and then asked her if she would “do it” for
$600.00.  G.J. testified that she told Brown
that she was not a prostitute.  After
Brown left the store G.J. purchased her items and began to walk home.  According to G.J., Brown approached her in a car,
pulled out a gun, and directed G.J. to get in the car.  G.J. testified that although she refused at
first, she complied because Brown had a gun in his hand and forced her.  Brown parked the car near a Valero station and
told G.J. to place his penis in her mouth.  According to G.J., Brown then pulled her from
the front seat into the back seat.  Brown
forced G.J. to have vaginal intercourse before driving her to the front of her
neighborhood and letting her out of the car.  Brown gave her a paper bag containing
newspaper and told her he did not give her real money because “she made things
hard.”  G.J. threw the bag on the ground
and ran to her house. 

On cross examination, Brown’s
attorney questioned G.J. about the torn clothing the State had entered into
evidence.  In response to Brown’s
attorney’s questioning about why her pants were not ripped, G.J. explained that
Brown had removed her pants and only ripped her underwear.  G.J. testified that she still had the same
amount of money when she left the car as when she got in, i.e., that Brown had
not stolen money from her.

After G.J. testified, the State argued
that because Brown had raised the defense of consent in his opening statement
and cross examination of G.J., it should be permitted to present evidence of
two extraneous offenses.  Brown’s counsel
asked the court to instead give limiting instructions on his opening statement,
and he argued that the proffered extraneous offense evidence was inadmissible
under the “balancing test.”  The trial
court found that the extraneous offenses were relevant to a contested issue and
therefore admissible.  

The State offered evidence of two
extraneous sexual assault offenses.  In
the first, S.V. testified that on December 23, 2005 she was approached by Brown
as she left a liquor store.  Brown asked
for directions to a strip club before telling her that he had a gun and
instructing her to get in his car.  Once
S.V. was inside Brown’s car, she agreed to put his penis in her mouth because
she was afraid of Brown.  After Brown let
her leave, she discovered that she did not have the money that she had with her
when she got into his car.  S.V. denied
that she was a prostitute at the time she met Brown but admitted that she was
later convicted of prostitution while working at an adult dance club.  

Regarding the second extraneous
offense, E.B. testified that on August 23, 2005 she was approached by Brown in
a car while waiting at a bus stop.  Brown
asked for directions before showing her a gun and telling her to get in the car.  According to E.B., Brown drove them to a
motel against her will, rented a room, and forced her to have sex while he held
a gun in his hand.  She testified that he
made her shower before leaving her in the motel.  During cross examination, E.B. denied that
she had sex with Brown with the expectation of being paid or that Brown had
given her money.  

          Brown
testified.  According to him, after
leaving the food mart, he offered G.J. $600.00 and she agreed to have oral and
vaginal sex with him.  According to
Brown, although he had agreed to pay her $600.00, he switched the brown bag
containing money, including her $65.00, with one that contained newspaper.  Brown also admitted that he had initially
denied that he had sex with G.J. when the police arrested him for sexual
assault of G.J.  

Brown testified that he also had
consensual sex with E.B. and S.V. and that his encounters with all three women
were part of a scheme to get money. According to Brown he had agreed to pay the
women for sex but when the women were not paying attention he switched the bags
of money he had initially shown them for bags containing newspaper folded up so
as to appear to be money.  Brown
testified that while driving around looking for a prostitute he stopped to ask E.B.
where he could find one.  Brown stated
that E.B. offered to have sex with him in exchange for money and the two had
sex in a motel.  According to Brown, E.B.
was now angry that he left her in a motel and switched a bag of money for a bag
of newspaper.  Brown also testified he
approached S.V. to ask her if she knew the location of a strip club.  According to Brown, S.V. told him that she
was having problems with her husband and agreed to have oral sex for money.  He stated that he had S.V. put her money in a
bag with the money he was going to use to pay her and he switched it for a bag
of newspaper. 

          The
jury found Brown guilty of aggravated sexual assault and the trial court
sentenced him to fifty years in prison.  

Admissibility of
Extraneous Offenses

In his first point of error, Brown
argues that the trial court erred in admitting evidence that Brown sexually
assaulted S.V. and E.B.  Brown contends
that the evidence of the two prior extraneous offenses was inadmissible under
Rule of Evidence 404(b) and that the probative value of the two extraneous
offenses did not substantially outweigh the danger of unfair prejudice under
Rule 403.  

The State argues, as it did at trial,
that the extraneous offenses were admissible under 404(b) to show intent in
response to Brown’s defensive theory that G.J. consented.  The State also contends the evidence was not
substantially more prejudicial than probative.  

A.  
Standard of review

We review a trial court’s decision to
admit evidence under Rules 404(b) and 403for an abuse of discretion.  See
Shuffield v. State, 189 S.W.3d 782,
793 (Tex. Crim. App. 2006); Wolfberg v.
State, 73 S.W.3d 441, 443 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).  A trial court abuses its discretion only if
its decision is “so clearly wrong as to lie outside the zone within which
reasonable people might disagree.”  Taylor v. State, 268 S.W.3d 571, 579
(Tex. Crim. App. 2008).  If the trial
court’s decision is correct on any theory of law applicable to the case, we
will uphold the decision.  De La Paz v. State, 279 S.W.3d 336, 344
(Tex. Crim. App. 2009).  “When a trial
court further decides not to exclude the evidence, finding that the probative
value of the evidence is not outweighed by the danger of unfair prejudice, this
decision too shall be given deference.”  Moses v. State, 105 S.W.3d 622, 627
(Tex. Crim. App. 2003).  

 

B.  
Applicable law

To prove Brown committed aggravated
sexual assault against G.J., the State had to prove beyond a reasonable doubt
that while exhibiting a deadly weapon Brown intentionally or knowingly caused the penetration of G.J.’s sexual
organ without her consent or caused penetration of her mouth with his sexual
organ without her consent.  Tex. Penal Code Ann. § 22.021; see
Brown v. State, 96 S.W. 3d 508, 512
(Tex. Crim. App. 2002).  When the defensive
theory of consent is raised the defendant necessarily disputes his intent to
engage in the alleged conduct without the complainant’s consent and places his
intent to commit sexual assault at issue. 
Casey v. State, 215 S.W.3d
870, 880 (Tex. Crim. App. 2007) (citing Rubio
v. State, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980)). 

C.  
Rule 404(b) 

First, Brown argues that the evidence
of the two extraneous offenses was inadmissible under rule 404(b) because they
were not similar enough to the assault involving G.J. to be probative of the
issue of identity.  The State contends
that because it was required to show that Brown engaged in sexual conduct with
G.J. without her consent, the
extraneous offenses were necessary to rebut Brown’s consent theory.  The issue of consent was hotly contested and
the extraneous offense evidence was admitted only after Brown’s attorney asserted
that G.J. had consented to having sex with Brown in both his opening argument and
on cross-examination of G.J.  See Bass v. State, 270 S.W.3d 557, 563
(Tex. Crim. App. 2008) (recognizing that defense opening statement opens door
to admission of extraneous-offense evidence to rebut defensive theory raised in
the statement).  

Rule 404(b) provides that “[e]vidence
of other crimes, wrongs, or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.”  Tex.
R. Evid. 404(b); see Martin v.
State, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005) (quoting same).  But, Rule 404(b) further provides that
extraneous-offense evidence may “be admissible for other purposes, such as
proof of motive, opportunity, intent, preparation, plan, knowledge, identity,
or absence of mistake or accident[.]”  Tex. R. Evid. 404(b); see Martin, 173 S.W.3d at 466.  Moreover this list is illustrative, rather
than exhaustive, and the Court of Criminal Appeals has concluded that this
language may allow the admission of an extraneous offense when a defendant
raises a defensive issue that negates one of the elements of the offense.  Martin,
173 S.W.3d at 468 (similar extraneous sexual offense involving defendant was
admissible to show complainant did not consent to sexual activity).  “Thus a party may introduce evidence of other
crimes, wrongs, or acts if such evidence logically serves to make more or less
probable an elemental fact, an evidentiary fact that inferentially leads to an
elemental fact, or defensive evidence that undermines an elemental fact.”  Id. (citing
Montgomery v. State, 810 S.W.2d 372,
387 (Tex. Crim. App. 1991) (opinion on rehearing)).

Brown argues that the extraneous offenses
should not have been admitted because they are not similar enough to be
probative of identity.  But as the State points
out, it did not offer them to prove identity, because Brown admitted having sex
with G.J.  The Court of Criminal Appeals
has held that less similarity is needed to establish admissibility of an
extraneous offense when it is offered to establish intent rather than identity.  Plante
v. State, 692 S.W.2d 487, 492–93 (Tex. Crim. App. 1985); see also Dennis v. State, 178 S.W.3d
172, 179 (Tex. App.—Houston [1st Dist] 2005, pet ref’d.) (similarity
required to admit extraneous offense evidence to rebut appellant’s frame-up
defense is less than that required when extraneous evidence is used to show
defendant’s system).  Here, E.B., S.V., and G.J. all testified that
when Brown initially approached them, he asked for directions.  S.V. and G.J. testified that Brown
specifically asked for directions to a strip club.  All three women testified that a short time after
asking for directions, Brown pulled out a gun or told them that he had a gun in
order to get them into his vehicle.  G.J.
and S.V. both testified that Brown forced them to perform sexual acts in his
car and they were permitted to leave after they complied with Brown’s
demands.  Although Brown took E.B. to a
hotel, E.B., like G.J., testified that Brown continued to hold the gun during
the assault.  Although the details of the
sexual acts Brown demanded differed in some respects, Brown began each assault
by asking for directions and then forcing the women into his car by making threats
involving a gun.  The trial court did not
abuse its discretion in admitting the extraneous offense evidence because the
testimony that Brown sexually assaulted E.B. and S.V. while holding a gun or
threatening to use a gun was probative of an element of the charged offense
insofar as it tended to show that G.J. did not consent to the sexual acts with
Brown.  See Martin, 173 S.W.3d at 468 (offenses sufficiently similar for
extraneous offense evidence to be admissible to rebut consent defense in sexual
assault case where appellant, in two separate instances, falsely claimed to be law
enforcement officer as part of ruse to gain trust of complainant and extraneous
offense witness, and then sexually assaulted each of them); see Brown, 96 S.W.3d at 513 (offenses sufficiently similar for
extraneous offense evidence to be admissible for purpose of proving appellant’s
intent where in three instances, appellant picked up a woman, took her to a
remote area, and left her stranded with little clothing).

D.  
 Rule 403

Brown also argues that even if the extraneous
offense evidence was admissible under Rule 404(b), the evidence was
nevertheless inadmissible under Rule 403.  

Under Rule 403, relevant evidence may
be excluded “if its probative value is substantially outweighed by the danger
of unfair prejudice, confusion of the issues, or misleading the jury . . .
.”  Tex.
R. Evid. 403; see Martin, 173
S.W.3d at 466 (quoting same).  In
determining whether the probative value of evidence is substantially outweighed
by the danger of unfair prejudice, confusion of the issues, or misleading the
jury, or by considerations of undue delay, or needless presentation of
cumulative evidence courts should balance the following factors: (1) the
inherent probative force of the proffered evidence along with (2) the proponent’s
need for that evidence against (3) any tendency of the evidence to suggest
decision on an improper basis, (4) any tendency of the evidence to confuse or
distract the jury from the main issues, (5) any tendency of the evidence to be
given undue weight by a jury that has not been equipped to evaluate its
probative force, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or merely repeat evidence already
admitted.  Gigliobianco v. State, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Under the first two factors we examine
the probative value of the evidence.  The
term “probative value” refers to “the inherent probative force of an item of
evidence—that is, how strongly it serves to make more or less probable the
existence of a fact of consequence to the litigation—coupled with the
proponent's need for that item of evidence.”  Id. at
641.  Under our 404(b) analysis we
determined that the extraneous offense evidence is probative of an element of
the charged offense, the absence of consent. 
And the State’s need for the extraneous offense evidence was considerable.  Because Brown did not deny that he had sex
with G.J., the issue of intent was central to the State’s case.  The Court of Criminal Appeals has stated that
this intent cannot be inferred from the mere fact of intercourse with the
complainant.  Rubio, 607 S.W.2d at 501. 
Because the only physical evidence of force was G.J.’s torn clothing,
the State’s need for the extraneous evidence to respond to Brown’s consent
defense was high.  See Wheeler v. State, 67
S.W.3d 879, 888 (Tex. Crim. App. 2002) (in prosecutions for sexual offenses, successful
conviction often depends on whether jury believes complainant, therefore developing
into “swearing match” between complainant and defendant).  

Under the third factor, we note that
there is a tendency of evidence to suggest decision on an improper basis when
the subject matter is that of a sexual crime because of the inherently inflammatory
and prejudicial nature of sex crimes.  Wheeler, 67 S.W.3d at 889 (evidence of
extraneous sexual offense will always carry emotional weight and danger of
impressing the jury in irrational, indelible way but prejudicial nature must
substantially outweigh probative value). 
In this case, S.V. and E.B.’s testimony posed a risk of prejudicing the
jury.  Likewise, with respect to the
fourth factor, there did exist a possibility that the jury would focus on the
two extraneous offenses instead of focusing on the charged offense.  

Under the
fifth factor, we weigh any tendency of the evidence to be given undue weight by
a jury that has not been properly equipped to evaluate the probative force of
the evidence.  Here, the jury charge
expressly instructed the jury to consider the extraneous offense evidence only
in determining the issues enumerated in Rule 404(b).  See
Blackwell v. State, 193 S.W.3d 1, 6–17 (Tex. App.—Houston
[1st Dist.] 2006, pet. ref’d.) (approving jury instruction limiting jury’s reliance on extraneous
offense evidence to issues enumerated in 404(b)).  Similarly, following S.V.’s testimony the
jury heard verbal instructions that it “may only consider the same in
determining the motive, opportunity, intent, preparation, plan, knowledge,
identity or absence of mistake or accident of the defendant, if any, in
connection with the offense, if any, alleged against him in the indictment and
for no other purpose.”  Because the jury
was provided with these express written and oral instructions limiting its
consideration of the extraneous offense evidence, we conclude that the jury was
properly equipped to evaluate the probative force of the evidence.  See id. at
17.  Finally, under the sixth factor we consider
the time required to develop the evidence. 
Here, approximately one fifth of the testimony during the guilt and
innocence phase of the trial involved the presentation of the extraneous
offense evidence.  

Balancing
all of the factors, we conclude that the trial court did not abuse its discretion
in determining the extraneous offense evidence was not substantially more
prejudicial than probative under Rule 403. 
Dennis, 178 S.W.3d at 181 (trial
court’s decision to admit evidence of extraneous sexual assault of girl of
similar age of complainant, occurring in same month and in same apartment was
not outside of the zone of reasonable disagreement when evidence was highly probative
of defensive theory of fabrication); see
also Blackwell, 193 S.W.3d at 18 (extraneous offense evidence intended to
rebut defensive theories of absence of intent to commit sexual offense
admissible under Rules 403 and 404(b)).  

We overrule Brown’s first issue.

Jury Charge 

In his second issue, Brown contends
that the charge erroneously failed to expressly instruct the jury to limit its consideration
of the extraneous offense evidence to only the issue of whether Brown committed
the charged offense without G.J.’s consent.  In other words, he contends it was error to
permit the jury to consider it for any of the purposes enumerated in Rule
404(b).  Brown contends this was harmful
error that requires reversal.  

A.  
Applicable Law

In analyzing a jury charge we first
decide whether error exists and if we find error, we analyze that error for
harm.  Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)
(citing Hutch v. State, 922 S.W.2d
166, 171 (Tex. Crim. App. 1996).  Under Almanza, charge error requires reversal
when the defendant has properly objected to the charge and we find “some harm”
to his rights.  Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  When the defendant fails to object or states
that he has no objection to the charge, we will not reverse for charge error
unless the record shows “egregious harm” to the defendant.  Id.  Thus, we review alleged charge error by
considering two questions: (1) whether error existed in the charge; and (2)
whether sufficient harm resulted to compel reversal.  See Middleton,
125 S.W.3d 453.  We turn first to the
question of error.

B.  
Analysis 

Brown’s sole objection to the charge
related to the trial court’s ruling on a lesser included offense instruction,
which Brown has not challenged on appeal. 
Brown did not object to the limiting instruction relevant to the
extraneous offense evidence.  The relevant
portion of the charge stated:

You are further instructed that if there is any evidence
before you in this case regarding the defendant’s committing an alleged offense
or offenses other than the offense alleged against him in the indictment in
this case, you cannot consider such evidence for any purpose unless you find
and believe beyond a reasonable doubt that the defendant committed such other
offense or offenses, if any, and even then you may only consider the same in
determining the motive, opportunity, intent, preparation, plan, knowledge,
identity or absence of mistake or accident of the defendant, if any, in
connection with the offense, if any, alleged against him in the indictment and
for no other purpose.  

Brown argues that the jury charge
here is similar to the charge the Court of Criminal Appeals held improper in Owens v. State.  Owens
v. State, 827 S.W.2d 911, 916–917 (Tex. Crim. App. 1992).  In Owens,
the Court held that a charge instructing the jury it could consider extraneous
evidence for the limited purpose of “determining the system of the Defendant”
was improper because no evidence at trial showed that the extraneous offense
was the system or unusual handiwork of the defendant.  Id. at 913, 917.  Moreover, the charge did not expressly
instruct the jury that it could consider the evidence on the issue of frame-up,
which was the defensive theory that the State argued the extraneous evidence
was admissible to rebut.  Id. at 917.  The Court held:

Absent
such additional instruction, there is no way for an appellate court to know
whether the jury properly applied the evidence of appellant’s “system” to rebut
the weight or credibility of appellant’s “frame-up” theory or relied on it for
an improper basis such as character conformity.

 

Id. 

This case
differs from Owens.  Unlike in Owens,
the jury charge here instructed the jury to limit consideration of the
extraneous offense evidence to the issues enumerated under Rule 404(b) and the
State had raised evidence of Brown’s
intent to commit the sexual assault without consent to rebut Brown’s consent
theory.  See Blackwell, 193 S.W.3d at 16. 
In Blackwell v. State, we were
presented with a jury charge with nearly identical language.  We concluded that the charge properly limited
the jury’s reliance on extraneous offense evidence to rebut a frame-up defense
because the charge limited the jury’s consideration to the exceptions
enumerated under Rule 404(b).  Although the
charge here, like the one in Blackwell,
instructed the jury that it could consider the extraneous offense evidence for any
of the Rule 404(b) purposes rather than only the one in dispute, we concluded
in Blackwell, as we do here, that the
additional language was mere surplusage that the jury could have disregarded as
irrelevant.  See id.  While the jury
charge was not as narrowly tailored as it could have been, it properly
instructed the jury to consider the extraneous offense evidence for only the
purposes permitted by Rule 404(b), one of which Brown had disputed at trial.  We therefore find no error in the
charge.  See id. (when lack of intent or motive was defensive theory,
instructions that jury could consider extraneous offense evidence for no
purpose other than 404(b) exceptions enumerated in charge properly restricted
jury’s use of evidence).  

We overrule Brown’s second issue.

Argument During
Punishment Phase

          In his
third issue, Brown argues that the prosecutor made an improper argument to the
trial court.  In its argument during the punishment
phase, the State said: “But who knows how many times this defendant has done
what he did in those three cases and just didn’t get caught.  He picks the right victims, women who are
scared and maybe won’t come forward.  And
so, who knows how many other victims are out there.”  Brown contends that the State’s argument was
improper because it referred to evidence outside the record and caused the
trial court to impose a harsher punishment. 

     To
complain on appeal about an improper argument, a defendant must object at trial
and pursue his objection to an adverse ruling. 
Cockrell v. State, 933 S.W.2d
73, 89 (Tex. Crim. App. 1996).  A
defendant must object each time an improper argument is made, or he waives his
complaint, regardless of how egregious the argument.  See
Valdez v. State, 2 S.W.3d 518, 521–22 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d);
Wilson v. State, 179 S.W.3d 240, 249
(Tex. 
App.—Texarkana
2005, no pet.).  Brown concedes that he
did not object to the prosecutor’s argument at trial.  We therefore conclude Brown failed to
preserve this issue for our review.

We overrule Brown’s third issue. 

Conclusion

          We affirm the judgment of
the trial court.  

 

                                                                   Rebeca
Huddle 

                                                                   Justice


 

Panel
consists of Justices Jennings, Massengale, and Huddle.

Do
not publish.   Tex. R. App. P. 47.2(b).