Opinion by Justice Burgess
I. Introduction
In Hunt County, Texas, George Briscoe was charged with (1) theft of property worth more than $1,500.00, but less than $20,000.00; (2) giving a false or misleading statement to obtain property or credit in an amount more than $1,500.00, but less than $20,000.00; and (3) theft of property worth more than $20,000.00, but less than $100,000.00. After a jury trial, Briscoe was found guilty of all three charges. On the first charge of theft, he was sentenced to 180 days in state jail. For giving a false statement to obtain property or credit, he was sentenced to two years in state jail, probated for five years, assessed a $10,000.00 fine, and ordered to pay $13,000.00 in restitution. On the final charge of theft, he was sentenced to ten years in prison, probated for ten years, assessed a $10,000.00 fine, and ordered to *111 pay $28,862.00 in restitution. The three sentences were to run concurrently.
Here, Briscoe appeals from his conviction for theft of property in an amount greater than $20,000.00, but less than $100,000.00.[1] In a single point of error, Briscoe contends that the trial court erred in granting the State's motion to strike the vehicle identification numbers (VIN) from three of the eight listed items of property which Briscoe was alleged to have stolen.[2] Finding that the VIN numbers were immaterial, we overrule this point of error and affirm.
The facts of this case are discussed in detail in our opinion in Briscoe's companion case, cause number 06-17-00059-CR, in which he appeals his conviction for theft of property valued at more than $1,500.00, but less than $20,000.00. Therefore, in this opinion, we discuss only the facts relevant to the determination of whether the trial court erred in granting the State's motion to strike three VINs from the indictment.
II. Factual And Procedural Background
Briscoe's indictment alleged, in pertinent part, that he unlawfully acquired or otherwise exercised control over property, to-wit:
1. 1986 Ford 3/4 ton truck, VIN #2FTHF26L1GCB48286; and/or
2. 1996 GMC 2500 truck, VIN #1GTGK29R9TE528746; and/or
3. 2002 Polaris 6x6, VIN #4XARFSOA42D820905; and/or
4. Quick Feed Systems five-ton deer feed buggy; and/or
5. dual axle trailer; and/or
6. Ranger Polaris 6x6, VIN #4XARFSOA42D820905; and/or
7. 16' Hunting Trailer, VIN #5PKUEM6235W050273; and/or
8. Northern Tool Backhoe attachment;
On the day of trial, but prior to the commencement of the trial on the merits, the State moved to "strike as surplusage" the VINs from items 1, 6, and 7. Briscoe objected, arguing, in part, that the VIN numbers were not surplusage.[3] The trial court overruled Briscoe's objection, granted the State's motion, and interlineated the indictment.
On appeal, Briscoe contends that the deleted VINs were not surplusage. Essentially, Briscoe argues that, because the information was not surplusage, the trial court erred in allowing the State to delete it from the indictment. He then argues that, because it was error to delete the information, sufficiency of the evidence must be evaluated based on the indictment as originally filed. Finally, he concludes that, based on the original indictment language, the evidence is insufficient because the State failed to prove the deleted information. Briscoe points to Burrell v. State , 526 S.W.2d 799 (Tex. Crim. App. 1975), *112 and Spencer v. State , 867 S.W.2d 81 (Tex. App.-Texarkana 1993, pet. ref'd), in support of his argument.
III. Analysis
A. History of the General Surplusage Rule and Burrell Exception Prior to Gollihar v. State , 46 S.W.3d 243 (Tex. Crim. App. 2001)
Historically, surplusage issues arose in two contexts. First, surplusage issues arose when evaluating whether the evidence was sufficient to support the conviction on appeal. Specifically, when there was a variance between the allegations in the indictment and the proof at trial, the question became whether the variance was fatal, i.e., whether it involved essential elements of the offense or whether it merely involved surplusage in the indictment which could be disregarded. See Weaver v. State , 551 S.W.2d 419 (Tex. Crim. App. 1977) (holding that fatal variance existed between indictment charging defendant with using a .22 caliber Ruger automatic pistol and the proof that defendant used a .22 caliber Luger automatic pistol, rejecting argument that model of firearm was surplusage), overruled by Gollihar v. State , 46 S.W.3d 243, 256 (Tex. Crim. App. 2001). Second, surplusage issues arose when determining whether a trial court erred in permitting the State to amend the indictment over the defendant's objection. See Eastep v. State , 941 S.W.2d 130, 134 (Tex. Crim. App. 1997), overruled by Gollihar , 46 S.W.3d at 256. In that instance, whether the trial court's ruling was error depended upon whether the change to the indictment was an amendment or merely an abandonment of mere surplusage.[4]
In both instances, the definition of surplusage was the same: "[s]urplusage is unnecessary language not legally essential to constitute the offense alleged in the charging instrument." Id. (citing Collins v. State , 500 S.W.2d 168 (Tex. Crim. App. 1973) ). And, in both instances, "[t]he general rule is that allegations which are not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, are treated as surplusage." Id. (quoting Whetstone v. State , 786 S.W.2d 361, 365 (Tex. Crim. App. 1990) ). Thus, courts held that "the charging instrument may be altered to delete language which is not descriptive of what is legally essential to the validity of the indictment." Id.
Likewise, in both instances, "there [was] a well-recognized exception to this rule. Where the necessary matter is descriptive of that which is legally essential to charge a crime, the State must prove it as alleged though needlessly pleaded." Id. at 134 n.7. Furthermore, "indictment surplusage which is tracked in the application paragraph of the jury charge had to be proven by the State." Gollihar , 46 S.W.3d at 251 (citing Ortega v. State , 668 S.W.2d 701 (Tex. Crim. App. 1983) ). In Gollihar , the Court of Criminal Appeals noted,
*113 This special exception to the general surplusage rule (hereinafter called the " Burrell exception" because it is often attributed to Burrell v. State , 526 S.W.2d 799 (Tex. Crim. App. 1975) ), does not employ any materiality requirement. It is as if unnecessary allegations that are descriptive of that legally essential to charge a crime are presumed to be material.
Id. at 250.
As will be shown below, the general surplusage rule and the Burrell exception were overruled by the Court of Criminal Appeals in Gollihar in the context of evidence sufficiency questions.[5] Id. at 243. The issue before us is whether any part of the general surplusage rule and the Burrell exception survived Gollihar in the context of changes to charging instruments. Because we find that they did not, and because the information deleted from the indictments in this case was immaterial, we affirm Briscoe's conviction.
B. Gollihar v. State
In Gollihar , the Court of Criminal Appeals examined the viability of the general surplusage rule and Burrell exception when resolving evidence sufficiency questions in light of its holding in Malik v. State that sufficiency of the evidence is not measured against the jury charge actually given, but against a "hypothetically correct jury charge." Id. at 253 (citing Malik v. State , 953 S.W.2d 234 (Tex. Crim. App. 1997) ). The Court of Criminal Appeals concluded that, while it was "clearly not willing to allow the hypothetically correct jury charge to wholly re-write the indictment to charge a different offense," "[r]eview of cases since Malik gives some indication that Malik 's hypothetical jury charge may disregard certain unnecessarily pled indictment allegations on sufficiency review." Id. After surveying the variance cases decided after Malik , the Court of Criminal Appeals concluded, "In light of the principles underlying Malik and the above post- Malik cases, we hold that a hypothetically correct jury charge need not incorporate allegations that give rise to immaterial variances.... [I]n so holding, we reaffirm the fatal variance doctrine and overrule the surplusage law and the Burrell exception." Id. at 256. Consequently,
when faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a "material" variance will render the evidence insufficient. Thus, the hypothetically correct jury charge will take into consideration the fatal variance doctrine formerly expressed by this Court and today reaffirmed. Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included.
Id. at 257.[6] ,[7]
C. Surplusage Under Article 28.10 *114 Nevertheless, as noted above, Gollihar was decided in the context of evidence sufficiency review on appeal, and the question presented here is whether any part of the general surplusage rule and the Burrell exception remains viable in the context of changes to charging instruments after Gollihar . A comparison of the reasoning in Gollihar to Article 28.10 compels the conclusion that Gollihar overruled the general surplusage rule and the Burrell exception in the indictment amendment context as well.
Amendments to charging instruments are governed by Article 28.10 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 28.10 (West 2006). That Article provides:
(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.
(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits *115 commences if the defendant does not object.
(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.
See ids="11898363" index="20" url="https://cite.case.law/sw2d/953/234/">id.
Thus, under Article 28.10, the State is free to amend the indictment over the defendant's objection with two limitations: (1) the amendment must be made "before the date the trial on the merits commences" and (2) amendment cannot occur if the amendment would "charge[ ] the defendant with an additional or different offense or if the substantial rights of the defendant [would be] prejudiced." Id. In this case, Briscoe does not argue that the amendments charged him with "an additional or different offense." Accordingly, we will only consider Gollihar's impact on amendments under Article 28.10(c) that affect the defendant's "substantial rights."
Article 28.10(c) prohibits amendment over the defendant's objection "if the substantial rights of the defendant are prejudiced." Id. In Gollihar , the Court of Criminal Appeals held that "the widely-accepted rule ... is that a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial." Gollihar , 46 S.W.3d at 249-50. Accordingly, the basis for the ruling in Gollihar is the same as the prohibition against amendment over the defendant's objection in Article 28.10(c). Based on this similarity, it follows that Gollihar applies to Article 28.10(c) as well.
To interpret Gollihar otherwise would lead to an exercise in futility. If the Burrell exception prohibited the deletion of descriptive surplusage from the indictment under Article 28.10(c), then the challenged language would remain in the indictment during trial. Yet, if the descriptive information is immaterial under the test announced in Gollihar , then after conviction, the appellate court could simply disregard the descriptive information in determining whether the evidence was insufficient to sustain the conviction. Therefore, in both instances, the question is the same whether raised under Article 28.10(c) or on sufficiency review, namely, "whether the indictment, [without the descriptive information,] informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the ... indictment[, without the descriptive information,] would subject the defendant to the risk of being prosecuted later for the same crime." Gollihar , 46 S.W.3d at 257. If the answer to both of these questions is no, then not only may the language be disregarded as immaterial in deciding sufficiency of the evidence, it may also be deleted from the indictment over the defendant's objection without violating Article 28.10(c).[8]
*116 D. The VINs in the Indictment in this Case Were Immaterial
Accordingly, we must now decide whether the VINs in this case were material. This question was essentially answered in Gollihar . In Gollihar , the State charged Gollihar with theft of a go-cart. Gollihar , 46 S.W.3d at 244. "On appeal, appellant claimed the evidence was insufficient to support his conviction because the indictment and the jury charge alleged the model number of the stolen cart to be 136202, but the evidence at trial showed the model number to be 136203." Id. In determining that the variance in the serial number was immaterial, the Court of Criminal Appeals held,
We note at the outset that the State was not required to plead the model number of the stolen cart in order to give adequate notice of the charges against appellant. Code of Criminal Procedure article 21.09 provides in part that "[i]f known, personal property alleged in the indictment shall be identified by name, kind, number, and ownership." TEX. CODE CRIM. PROC. art. 21.09. "Number," within the meaning of this provision, has been interpreted to mean quantity. Wood v. State , 632 S.W.2d 734, 736 (Tex. Crim. App. 1982). There is no indication in the record that appellant did not know what cart the State was claiming he stole or that appellant was misled by the allegation or surprised by the proof at trial. The needless allegation of the wrong number did not impair appellant's ability to prepare his defense. Appellant did not attempt to raise a defense that he did not take the cart alleged or that the State had misidentified the allegedly stolen property. Rather, appellant admitted taking the cart, but claimed he thought it had been paid for by a friend. Appellant's defense did not depend upon the model number alleged. Neither does the needless allegation of the model number subject appellant to the risk of being prosecuted later for the same crime. Appellant is in no danger of being prosecuted again for theft of the same cart proved at trial.
Id. at 258.
In the present case, as in Gollihar , Briscoe did not claim that he did not know what equipment the State alleged he had stolen or that he was mislead or surprised by the lack of VINs at trial. Instead, he testified that (1) he did not know what had happened to any of the equipment; (2) that if it had been sold, there were others present at the ranch who also had access to it (including the owner, Aycox); and (3) that if it was sold, he never received any of the proceeds from those sales. Moreover, as in Gollihar , Briscoe is not in danger of being prosecuted again for theft of the same equipment in a later proceeding. As the Court of Criminal Appeals noted, the "entire record, not just [the] indictment, may be referred to in protecting against double jeopardy in event of subsequent prosecution." Id. (citing United States v. Apodaca , 843 F.2d 421, 430 n.3 (10th Cir. 1988) ). Even in the absence of the VIN numbers, the record establishes that several pieces of the stolen equipment were secured by Constable Doc Pierce and subjected to a property hearing before Justice of the Peace Jennifer Reeves to identify which party had the right of possession to that property. Reeves issued two orders, which were introduced into evidence as State's Exhibits 25 and 26, that identified the equipment litigated in that hearing.
In addition, Briscoe himself introduced photographs of equipment which had been stolen as Defendant's Exhibits 11-21 in order to establish that the property was present at the ranch. Of the eight items identified in the indictment, only five of them had VIN numbers, and the State *117 sought to delete only three of those numbers. Of those three, the hunting trailer, the 1986 Ford ¾ ton truck, and the Polaris 6x6 ATV were identified in the photographs that Briscoe introduced into evidence. Consequently, based on the entire record, we find that "the indictment, [without the descriptive information,] informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial," and that prosecution under the ... indictment[, without the descriptive information,] would [not] subject the defendant to the risk of being prosecuted later for the same crime." Gollihar , 46 S.W.3d at 257.
IV. Conclusion
Accordingly, we overrule this point of error and affirm the trial court's judgment.

In companion cases 06-17-00059-CR and 06-17-00060-CR Briscoe appeals from convictions for theft of property valued at more than $1,500.00, but less than $20,000.00, and making a false statement to obtain credit of more than $1,500.00, but less than $20,000.00, respectively.

In a consolidated brief, Briscoe also argued that the State violated Article 39.14 of the Texas Code of Criminal Procedure by failing to disclose State's Exhibits 20 and 32 prior to trial. To the extent this point of error pertains to this appeal, we addressed the issue in detail in our opinion of this date on Briscoe's appeal in cause number 06-17-00059-CR. For the reasons stated therein, we likewise conclude that error has not been shown in this case.

Briscoe disputed the State's characterization of the VINs as surplusage, objected on due process grounds, and requested a continuance, all of which the trial court overruled.

Under Article 28.10, "[a]n amendment to an indictment is a change that affects the substance of the indictment." Mayfield v. State , 117 S.W.3d 475, 476 (Tex. App.-Texarkana 2003, pet. ref'd) (citing Eastep v. State , 941 S.W.2d 130, 132-33 (Tex. Crim. App. 1997) ), overruled on other grounds by Riney v. State , 28 S.W.3d 561 (Tex. Crim. App. 2000). By contrast, "an abandonment, even if effected by a physical change to the indictment, does not affect its substance." Id. Thus, "[a]n alteration to the charging instrument that constitutes abandonment does not invoke the requirements of Article 28.10." Id. As fleshed out by this body of law, abandonment was appropriate in three instances: (1) where the alteration changes the ways or means of committing the offense; (2) where the alteration reduces the charge to a lesser-included offense; and (3) where the alteration eliminates surplusage. Id. We only address the third instance in this opinion.

Although the issue was usually characterized as a fatal variance question, the Court of Criminal Appeals noted in Gollihar , "[W]e have routinely treated variance claims as insufficiency of the evidence problems." Gollihar , 46 S.W.3d at 247.

Regardless of whether a variance is created because the indictment alleges information which is not proved at trial (surplusage) or whether a variance is created because the evidence at trial establishes something that is different from what was alleged in the indictment (variance), the crucial question is whether the variance was material. If so, then the evidence at trial was insufficient to support a guilty verdict. Under this interpretation, surplusage is a type of variance in the sense that what is alleged in the indictment is not the same as what is proved at trial. In a footnote to Gollihar , the majority adopted this interpretation:
While surplusage law, without the Burrell exception, is generally consistent with the policies expressed in Malik and its subsequent cases and might be maintained, we have opted for a simpler approach by allowing the fatal variance doctrine to resolve surplusage problems. If the allegation is one which would be considered "surplusage" in that it is not essential to constitute the offense and might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment, then it would rarely meet the test of materiality. We see little value in maintaining both doctrines.
Id. at 256 n.21. Accordingly, a variance resulting from a failure to prove at trial specific information which is alleged in the indictment (i.e., surplusage) may be disregarded in a sufficiency of the evidence review if the variance is immaterial.

In Byrd v. State , the Court of Criminal Appeals considered whether an indictment alleging theft and identifying the victim as "Mike Morales" when the evidence at trial identified the victim as "Wal-Mart" constituted a fatal variance or an immaterial variance. Byrd v. State , 336 S.W.3d 242, 244-45 (Tex. Crim. App. 2011). In concluding that the variance was fatal, the court examined prior double-jeopardy cases and concluded that the variance was material, and therefore fatal, because it left the defendant exposed to prosecution for the same offense. Id. at 257. Logically, if the omission of an essential element of an offense is a material, fatal variance, it stands to reason that the inclusion of non-essential surplus language would not be material. Nevertheless, the Court of Criminal Appeals went further in Byrd and held,
The dissent in Bailey [v. State ,] aptly noted "the havoc that the word 'variance' has caused in our caselaw." Indeed that is correct. We agree with the Bailey dissent that "[t]he word 'variance' ought to be used to describe instances in which there is a minor discrepancy between the facts alleged and those proved, such as a difference in spelling, in numerical digits, or in some other minor way." But when the discrepancy between the charging instrument allegation and the proof at a theft trial is that of an entirely different person or entirely different property, the discrepancy is not merely a variance, it is a failure of proof.
Id. at 257-58 (quoting Bailey v. State , 87 S.W.3d 122, 131 (Tex. Crim. App. 2002) (Keasler, J., dissenting)). Based on this language, it could be argued that surplusage cannot be a variance. Yet, a closer examination of Bailey and Byrd indicates that this language was written in a specific context: cases where the indictment named one person, place, or thing; the proof at trial identified another person, place, or thing; and the question was whether the difference was material. In addition, Bailey was a double-jeopardy case, not a sufficiency of the evidence case. Nothing in Byrd or Bailey indicates that the Court of Criminal Appeals overruled its pronouncement in Gollihar that surplusage is to be evaluated for materiality under the fatal-variance doctrine by narrowing the definition of the term "variance."

Briscoe cites to our prior decision in Spencer v. State , where we held that the evidence was insufficient to support conviction because, under the Burrell exception, the State had identified the stolen vehicle as a "1984 ¾ ton Chrevolet Pickup truck, bearing Texas License plate number 325N7N," but then failed to prove the license plate number at trial. Spencer v. State , 867 S.W.2d 81 (Tex. App.-Texarkana 1993, pet. ref'd). Although we noted that, under existing law, the variance between the indictment and the proof was fatal, we "call[ed] on the Court of Criminal Appeals to overturn the outdated exception to the variance rule as it applies to indictments." Id. at 85. As we interpret Gollihar , the Court of Criminal Appeals has done so. Accordingly, in light of Gollihar , Spencer is no longer viable.