

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00194-CR

_____

JOHNATHAN LEE WOOD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 1323123

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

After years of sexual abuse by her mother's boyfriend, Johnathan Lee Wood, Sally[1] told her father that Wood had assaulted her. That report ultimately led to a Hopkins County jury conviction of Wood for continuous sexual assault of a young child[2] and a sentence of life imprisonment.

On appeal, Wood asserts that the trial court erred in allowing an amendment to the indictment on the day of trial, in limiting his cross-examination of the complaining witness regarding past instances of dishonesty, in limiting his cross-examination of the State's witnesses under Rule 412 of the Texas Rules of Evidence, in limiting his cross-examination of the complainant's father during the punishment hearing, in denying a mistrial for improper jury argument referencing the defendant's control of evidence, in not declaring a mistrial for the State's jury argument regarding community sentiments, in admitting a video recording of the complainant's forensic interview, and in entering a nunc pro tunc judgment without allowing him an opportunity to be heard. We affirm the judgment of the trial court,[3] because (1) allowing amendment of the indictment was not error, (2) there was no abuse of discretion in limiting cross-examination, (3) there was no abuse of discretion in denying a mistrial for improper jury argument, (4) the State did not argue community expectations, (5) Wood forfeited any error regarding

---

[1]We refer to all persons who were minors at the time of the offense by pseudonyms. *See* TEX. R. APP. P. 9.10.

[2]*See* TEX. PENAL CODE ANN. § 21.02(b) (West 2019).

[3]Since Wood does not challenge the sufficiency of the evidence supporting his conviction, we will only discuss the facts of the case where necessary to address an issue.

admission of Sally's recorded forensic interview, and (6) entering the nunc pro tunc order was not error.

*(1)     Allowing Amendment of the Indictment Was Not Error*

On October 1, 2013, the State filed its motion to amend Wood's indictment seeking to add "AND NOT THE SPOUSE OF THE DEFENDANT" and to strike the complainant's date of birth and allegations regarding violations of certain statutes.  On October 14, 2013, before voir dire of the venire panel began, the trial court considered the motion.  Although he acknowledged receiving a copy of the motion, Wood objected that the amendments would prejudice and violate his substantial rights.  He also objected that the motion did not specify where the additional language was to be placed.  The trial court overruled the objections and granted the State's motion.  After voir dire and jury selection, court adjourned for the day.  The following day, the jury was sworn, and the trial commenced.

Wood asserts that the trial court erred in allowing the amendment to the indictment.  He argues that (a) the trial court may not allow an amendment to the indictment on the day the trial commences—even if the trial has not yet begun—(b) that the trial court may not allow amendment over his objection, and (c) that the trial court was required to give him ten days to respond to the amended indictment.  We will address each of these arguments separately.

Article 28.10 of the Texas Code of Criminal Procedure governs the amendment of indictments.  *Briscoe v. State*, 542 S.W.3d 109, 114 (Tex. App.—Texarkana 2018, pet. ref'd), *cert. denied*, *Briscoe v. Tex.*, 139 S.Ct. 425 (2018) (citing TEX. CODE CRIM. PROC. ANN. art. 28.10 (West 2006)).  Article 28.10 provides:

3

(a)     After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences.  On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b)     A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c)     An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX. CODE CRIM. PROC. ANN. art. 28.10 (West 2006).  Thus—while the statute allows the State "to amend [the indictment] with notice up until the *day before* trial commences and[, in certain circumstances,] *after* the trial commences[—]the statute does not address [amendment on the] day of, but before[,] the trial commences."  *State v. Murk*, 815 S.W.2d 556, 558 (Tex. Crim. App. 1991).  Since the statute does not permit an amendment on the day of trial, but before the trial on the merits commences, a trial court errs in permitting an amendment in that time period.  *Sopido v. State*, 815 S.W.2d 551, 556 (Tex. Crim. App. 1990) (op. on reh'g); *Murk*, 815 S.W.2d at 558.

We have previously held that, for the purposes of Article 28.10, the trial commences "when jeopardy attaches" and that "[j]eopardy attaches when the jury is impaneled and sworn."  *Craig v. State*, No. 06-02-00151-CR, 2003 WL 21299595, at *3 (Tex. App.—Texarkana June 6, 2003, pet. ref'd) (not designated for publication)[4] (citing *Westfall v. State*, 970 S.W.2d 590, 592–93 (Tex. App.—Waco 1998, pet. ref'd); *Hinojosa v. State*, 875 S.W.2d 339, 342 (Tex. App.—Corpus

---

[4]"Although unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

4

Christi 1994, no pet.)). In this case, the jury was not sworn until the day after the trial court permitted the State to amend the indictment. Therefore, contrary to Wood's assertion, the trial court allowed the State's amendment on the day before the trial commenced. Consequently, Wood's complaint that the trial court allowed an amendment to the indictment on the day of trial, but before the trial commenced, is without merit.

Wood also complains that the trial court erred by failing to grant him a "mandatory" ten days to respond to the indictment. If the State seeks to amend its indictment before the date the trial commences, "[o]n the request of the defendant, the trial court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment." TEX. CODE CRIM. PROC. ANN. art. 28.10. Based on the plain language of the statute, our sister courts of appeals have consistently held that the allowance of ten days to respond to the amended indictment is required only if the defendant requested it. *See Ruiz Avalos v. State*, 764 S.W.2d 910, 912 (Tex. App.—Corpus Christi 1989, no pet.); *Henry v. State*, No. 12-18-00139-CR, 2019 WL 141382, at *3 (Tex. App.—Tyler, Jan. 9, 2019, no pet. h.) (mem. op., not designated for publication); *Sayed v. State*, No. 05-08-01198-CR; 2009 WL 2884168, at *7 (Tex. App.—Dallas Sept. 10, 2009, pet. ref'd) (not designated for publication); *McAfee v. State*, No 01-03-01041-CR, 2004 WL 2966361, at *2 (Tex. App.—Houston [1st Dist] Dec. 23, 2004, no pet.) (not designated for publication). We agree with our sister courts of appeals. Since Wood did not make a request for ten days in which to respond to the amended indictment, he was not entitled to such a period of time.

5

Finally, Wood argues that the trial court could not amend the indictment by adding "AND NOT THE SPOUSE OF THE DEFENDANT" over his objection. However, when, as here, the State amends the indictment "before the date the trial on the merits commences," it may do so over the defendant's objections if the amended indictment does not charge "the defendant with an additional or different offense or if the substantial rights of the defendant are [not] prejudiced." TEX. CODE CRIM. PROC. ANN. art. 28.10(a), (c); *Briscoe*, 542 S.W.3d at 115. Wood does not contend that adding this language to the indictment charged him with an additional or different offense.

In *Briscoe*, we held that the Texas Court of Criminal Appeals' analysis in *Gollihar v. State* applies to determining whether a defendant's substantial rights were prejudiced by an amendment to an indictment. *Briscoe*, 542 S.W.3d at 115 (citing *Gollihar v. State*, 46 S.W.3d 243, 249–50 (Tex. Crim. App. 2001)). To determine this, we examine "whether the indictment, as written, [sufficiently] informed the defendant of the charge against him . . . to allow him to prepare an adequate defense at trial, and whether prosecution under the [original] indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001) (citing *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)).

In this case, Wood did not claim that Sally was his spouse. Further, no such claim could have been made since Sally was ten years old at the time of trial and between the ages of three and nine years old when the abuse took place. Even without the additional language, the indictment sufficiently informed Wood of the charge against him so he could prepare his defense. Moreover,

6

Wood is not at risk of being prosecuted again for this crime. Therefore, Wood's "substantial rights" were not prejudiced by the amendment to the indictment.

For the reasons stated, we overrule this issue.

*(2)     There Was No Abuse of Discretion in Limiting Cross-Examination*

Wood asserts that the trial court erred in limiting his cross-examination of the State's witnesses. In his second and fourth issues, Wood argues that the State opened the door to (a) cross-examining Sally about prior specific instances of alleged dishonesty and (b) cross-examining Sally's father regarding the effect on the family of past allegations of sexual misconduct on the part of one of Sally's brothers, respectively.[5] In his third issue, Wood asserts that the trial court

---

[5]In his second and fourth issues, Wood also complains that the trial court violated his right to confrontation and his right to cross-examination, guaranteed under the United States and Texas Constitutions and by Article 1.05 of the Texas Code of Criminal Procedure. However, these complaints have been forfeited.

To preserve error for appellate review, our appellate rules "require[] that the record demonstrate (1) the complaining party made a timely and specific request, objection, or motion; and (2) the trial judge either ruled on the request, objection, or motion, or he refused to rule and the complaining party objected to that refusal." *Haley v. State*, 173 S.W.3d 510, 516 (Tex. Crim. App. 2005) (citing TEX. R. APP. P. 33.1). Thus, to preserve error for appeal under Rule 33.1, the party's request or objection, unless it is apparent from the context, must be specific enough to "let the trial judge know what he wants, [and] why he thinks himself entitled to it, and [to] do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). "[W]hen the context shows that a party failed to effectively communicate his argument, then the error will be deemed forfeited on appeal." *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009) (citing *Lankston*, 827 S.W.2d at 909). Further, the party's point of error on appeal must comport with the objection made at trial. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

Our examination of the record reveals that, when Wood asked the trial court to allow him to question Sally regarding past instances of alleged dishonesty, he argued only that the State had opened the door to questions regarding Sally's truthfulness. Further, when Wood made a bill of proof regarding the past instances, only their admissibility under Rule 608 of the Texas Rules of Evidence was discussed. When Wood sought to examine Sally's father, he argued only that the State had opened the door to that testimony, with no other argument supporting its admissibility. Consequently, his complaints on appeal that his rights to confrontation and to cross-examination were violated do not comport with his complaint at trial. *See id.* Wood has therefore forfeited these complaints for appellate review. *Resendez*, 306 S.W.3d at 313.

erred in preventing him from examining Sally's father about a prior outcry Sally made against one of her brothers.[6]

We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

A.      *Excluding Specific Acts of Dishonesty*

During Sally's direct testimony, the following exchange took place with the State's attorney:

> Q      [By the State's Attorney]:   And, [Sally], what is the thing that I have told you is the most important thing?
>
> A.      To not to lie.
>
> Q.      Okay.   So what -- what is the -- is the truth the biggest thing?

---

[6]Wood asserts under his third issue that he "repeatedly sought the opportunity to cross-examin[e] State's witnesses on the prior outcry [Sally] made against her brother." Wood makes three citations to the record in support of this assertion. However, our examination of the record shows that, in one of the cited passages, Wood sought to question Sally about her prior outcry against Wood, not her brother, which the trial court allowed. In a second cited passage, Wood also sought to question an investigator about Sally's prior outcry against Wood, not her brother, which the trial court also allowed. The third cited passage occurred during the testimony of Sally's father during the punishment phase of the trial, in which the trial court denied Wood's request to cross-examine him about how Sally's allegations against her brother affected his family. Since this was the only instance cited by Wood in which the trial court excluded testimony regarding the allegations against Sally's brother, we will address only this instance.

A.    Yes.

Q.    Okay.   And, [Sally], you know the difference between a truth and a lie, right?

A.    Yes.

Q.    And is what you've told the jury today a truth?

A.    Yes.

Q.    Okay.   Now, I know we've talked about the fact that sometimes you like to tell stories at school or you like to tell stories to your friends and your sister.   Is that right?

A.    Yes.

In bench conferences before and during cross-examination, Wood argued, as he does on appeal, that this line of questioning opened the door for him to ask Sally about specific instances of alleged dishonesty to rebut the false impression that Sally would be truthful, a request the trial court denied. In a bill of proof, Wood informed the trial court that he wanted to ask Sally if she recalled having made statements that someone was dead in her backyard and that her mother had been injured in a car wreck and was in the hospital, when neither of these statements was true.

As a general rule, any "witness may be cross-examined on any relevant matter, including credibility." TEX. R. EVID. 611(b).  However, the manner in which a witness' credibility may be impeached is limited by the Texas Rules of Evidence.  Rule 608 allows a witness' credibility to be attacked by testimony or by an opinion "about the witness's reputation for having a character for truthfulness or untruthfulness." TEX. R. EVID. 608(a).  However, except for evidence of certain criminal convictions, our Rules of Evidence forbid cross-examining a witness on, or offering extrinsic evidence of, particular instances of the witness' conduct to impeach the witness'

9

credibility in general or character for truthfulness. *See* TEX. R. EVID. 608(b), 609; *Hammer v. State*, 296 S.W.3d 555, 563 (Tex. Crim. App. 2009); *Driggers v. State*, 940 S.W.2d 699, 705 (Tex. App.—Texarkana 1996, pet. ref'd). On the other hand, a witness may be cross-examined on, and extrinsic evidence introduced of, specific instances of conduct in order to show the witness' bias, interest, or motive to be untruthful. *See, e.g.*, TEX. R. EVID. 404(b)(2), 613; *Hammer*, 296 S.W.3d at 563.

In this case, Wood did not seek to question Sally about specific instances in which she had been untruthful in order to show her bias, interest, or motivation to be untruthful in her testimony. Rather, he sought to impeach her character for truthfulness. The clear implication of Wood's proposed line of questioning is that, since Sally had made up stories in the past, she was making up stories in her trial testimony. However, since these types of questions attack the witness' character for truthfulness, they are specifically barred by Rule 608(b) of the Texas Rules of Evidence. *Hammer*, 296 S.W.3d at 563.

Consequently, we cannot say that the trial court's exclusion of this evidence was an abuse of discretion. We overrule this issue.

B.      *Excluding Allegations Against Brother: Unpreserved*

In his third and fourth issues, Wood complains that the trial court erred in restricting his cross-examination of Sally's father regarding allegations of sexual misconduct by Sally's brother. Wood argues that the State opened the door to this cross-examination by asking Sally's father how accusations against Wood by Sally had affected his family.

10

The following exchange took place during Sally's father's testimony during the punishment phase of the trial:

> Q.   [By the State's attorney]:  How has this affected your . . . family?
>
> A.   It's . . . ripped my family apart.
>
> [Defense attorney]:  Can we -- before we do that, can we approach the bench?
>
> THE COURT:  Yeah.
>
> (The following occurred at the bench, outside hearing of jury.)
>
> [Defense Attorney]:  I just -- I think they're opening a door to the [brother] stuff coming in.
>
> THE COURT:  How is that?
>
> [Defense Attorney]:  By asking how this affects her family.  I mean, they've been through this before.  I want to know how that affected it.
>
> [The State]:  No.
>
> THE COURT:  I don't see that it opens it up to that.  How has this affected their family?
>
> [Defense Attorney]:  If he's going to talk about how they've had to react to this and how he thinks he ought to be punished for this, then it's relevant how he reacted when it was his son.
>
> [The State]:  No.  This is specifically --
>
> THE COURT:  I disagree with that, Mr. Long.  I'll overrule that objection.
>
> [Defense Attorney]:  I'm just telling you, I'm going to object to him going into that if I'm not being allowed to develop that.
>
> THE COURT:  I'll overrule that.

Prior to cross-examination, Wood had the following exchange with the trial court:

> [Defense Attorney]: If . . . the Court is not going to allow me to ask questions related to his prior incident because of the way he's testified, that he didn't know how to react, then I would like to make a bill on that at some appropriate time --
>
> THE COURT:  I'll allow that.

11

[Defense Attorney]: -- if the Court is not going to allow me to ask those questions.

THE COURT: I'm not.

[Defense Attorney]: That would be the only questions I would have of him.

THE COURT: All right.

Wood then passed the witness without asking any questions. Wood did not, then or at any later time, make an offer of proof regarding the anticipated testimony.

To claim error in the exclusion of evidence, the error must "affect a substantial right of the party," and the party must "inform[] the court of its substance by an offer of proof, unless the substance was apparent from the context." TEX. R. EVID. 103(a)(2). "The offer of proof may be in question-and-answer form or in the form of a concise statement by counsel." *Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009). "An offer of proof to be accomplished by counsel's concise statement must include a reasonably specific summary of the evidence offered . . . so that the court can determine whether the evidence is relevant and admissible." *Id.* (quoting *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998)). If the offer of proof is inadequate, error is not preserved. *Kamanga v. State*, 502 S.W.3d 871, 877 (Tex. App.—Fort Worth 2016, pet. ref'd). "The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful." *Holmes*, 323 S.W.3d at 168; *see* McCormick, Charles Tilford, *McCormick on Evidence* § 51 (7th ed. 2016). "A secondary purpose is to permit the trial judge to reconsider [its] ruling in light of the actual evidence. *Holmes*, 323 S.W.3d at 168 *see* McCormick, Charles Tilford, McCormick on Evidence § 51 (7th ed. 2016).

There was no question-and-answer offer of proof in this case. Wood informed the trial court that he wanted to find out how the accusations against Sally's brother had affected the family,

12

without specifying the questions or what answers he anticipated receiving. Consequently, we are unable to determine whether the trial court's ruling was erroneous or harmful. Therefore, Wood has not preserved this complaint for our review. We overrule Wood's third and fourth issues.

*(3)       There Was No Abuse of Discretion in Denying Mistrial for Improper Jury Argument*

During the State's rebuttal jury argument in the guilt/innocence phase of the trial, the State made the following argument:

> Folks, he says we don't have facts. What better facts do you get than that little girl? How much better does it get than having her bravely come in here when you could tell she did not want to be here and tell you what had happened to her for as long as she can remember?
> She can't control where he leaves his semen. She can't control that he didn't record himself giving a confession.

To this last statement, Wood immediately objected that it was a comment on his failure to testify, and the trial court sustained the objection. Wood then requested, and received, the trial court's instruction to the jury that it was to disregard the statement and that it was not to consider it for any purpose. Next, Wood moved for a mistrial, which the trial court denied.

Wood asserts that the trial court erred in denying his motion for mistrial. Wood argues that the last statement was a direct comment on his failure to testify and that it was so prejudicial that the trial court's instruction to the jury could not cure the error. The State responds that the comment was a reference to Sally's testimony that Wood had made her lie into a recorder.[7] It argues that, at most, the statement was an implied or indirect allusion to Wood's failure to testify.

---

[7]About a year before her outcry to her father, Sally had made an outcry to her mother. She and her mother left the house and stayed with her mother's friend, Rene. About a week later, Wood and his mother picked Sally up and took her back to his house, where he took her into a field and made her "lie into a recorder" and say that her accusations against him were not true.

13

A comment on the defendant's failure to testify "violates his state and federal constitutional privileges against self-incrimination." *Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011) (citing *Canales v. State*, 98 S.W.3d 690, 695 (Tex. Crim. App. 2003); *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001)). "[A] violation occurs when 'the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify.'" *Id*. (quoting *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007)).

Since the trial court sustained the objection and instructed the jury to disregard the statement, "[t]he only adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial." *See id*. (quoting *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004)). We review for abuse of discretion the trial court's refusal to grant a mistrial. *Id*. at 738–39 (citing *Hawkins*, 135 S.W.3d at 77). We consider "the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). If the ruling was within the zone of reasonable disagreement, it must be upheld. *Id.*; *Sanders v. State*, 387 S.W.3d 680, 687 (Tex. App.—Texarkana 2012, pet. struck). Mistrial is an appropriate remedy only when the error is highly prejudicial and incurable. *Ocon*, 284 S.W.3d at 884 (citing *Hawkins*, 135 S.W.3d at 77).

When a trial court denies a mistrial for improper jury argument, we determine whether it abused its discretion by balancing three factors:

> (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the

14

efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).

*Archie*, 340 S.W.3d at 739 (citing *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998); *Archie v. State*, 221 S.W.3d 695 (Tex. Crim. App. 2007)).

Since the State contends that the statement was not a comment on Wood's failure to testify, we first determine whether there was misconduct by the State. *See id*. at 739–40. In assessing whether the State violated Wood's constitutional privilege against self-incrimination, we "view the State's argument from the jury's standpoint and resolve any ambiguities in the language in favor of it being a permissible argument." *Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011) (citing 43 George E. Dix and John M. Schmolesky, *Texas Practice: Criminal Practice & Procedure* § 45:21 (3d ed. 2011)). There is no violation if the statement can be reasonably construed as merely an implied or indirect allusion to the defendant's failure to testify. *Id.* (citing *Busby v. State*, 253 S.W.3d 661, 666 (Tex. Crim. App. 2008)). "The test . . . is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id*. (citing *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001) (collecting cases)). We analyze the context in which the statement was made to determine whether the language used was of such a character. *Id*. (citing *Bustamante*, 48 S.W.3d at 765). "We cannot find that the prosecutor manifestly intended to comment on the defendants' failure to testify, if some other explanation for his remark is equally plausible." *Id*. (quoting *United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977)).

15

The complained-of comment came near the end of the State's rebuttal jury argument. In his jury argument, Wood emphasized the lack of physical and DNA evidence showing that any sexual assault had occurred or that he had physical contact with Sally. He also attacked Sally's credibility and emphasized that Sally had recanted the prior accusations against him that she made to her mother. In its rebuttal argument, the State responded to Wood's argument by reminding the jury that Sally had been consistent in her statements to the nurse who performed her sexual assault examination, to the forensic interviewer, and in her trial testimony. In responding to Wood's argument that Sally had recanted her earlier accusations, the State reminded the jury of Sally's testimony that Wood had taken her into a field and made her say it did not happen. Then, after addressing the lack of DNA evidence, the State reminded the jury that, although Sally had done the most she could do by testifying, she could not control the things that were not in her control.

In this context, it is plausible that the complained-of statement was intended as a rhetorical contrast to Wood's actions two years earlier when he coerced Sally to recant. Viewing the statement from the jury's standpoint in context, it plausibly could have interpreted the statement as a reminder that Wood chose to respond to the earlier accusations by forcing Sally to recant. Consequently, we cannot say that the statement "was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id*. Therefore, we find that the statement did not violate Wood's privilege against self-incrimination.

Since, in this argument, we find no violation by the State, we need not balance the factors set forth in *Archie*, which are premised on the existence of misconduct by the State. Further, since we have found no misconduct by the State, we cannot say the trial court was outside the zone of reasonable disagreement when it denied the mistrial. Therefore, we find that the trial did not abuse its discretion in denying the mistrial. We overrule this point of error.

*(4)     The State Did Not Argue Community Expectations*

In its closing argument during the punishment phase of trial, the State argued:

> This cute little girl who knows that this stuff wasn't right but she's -- she's a little girl. At some point, y'all -- at some point, that day is going to come when she starts thinking, oh, my gosh, oh, my -- and she starts considering for real everything that has happened to her over these years. And can you imagine what that's going to do to her?
>
> I absolutely agree with Ms. Morse. Think about the first date. Think about dating. Think about that trust, trying to trust people. Think about what you're carrying around. At some point, I'm going to have to tell. Think about the decisions you make in your life and you thinking back on your past, and always, always this face will be in the back of her mind grabbing her hand and taking her into those rooms. Boy, what a sentence. What a sentence.
>
> You see, y'all, this case is not just -- it is about Mr. Wood, but I disagree with defense counsel. It is so much about [Sally]. It's about what do you-all and what does our community think about guys that do this? The charge itself, continuous sexual assault of a child, what does our community say to that? I'll tell you what our community should say to that.

The trial court overruled Wood's objection that the State was arguing community expectations.

Wood complains that the trial court erred in allowing this argument because the State was arguing community expectations. Wood claims that this argument asked the jury to base its sentence on the unproven sentiment or expectations of the community. We disagree.

Jury argument is proper if it (a) sums up the evidence; (b) makes reasonable deductions from the evidence; (c) answers opposing counsel's arguments; or (d) pleads for law

17

enforcement. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). It is improper for a prosecutor to make an appeal based on the unproven sentiments of the community or to induce a jury to base its verdict on the possible demands, desires, or expectations of the community. *Wilson v. State*, 179 S.W.3d 240, 247 (Tex. App.—Texarkana 2005, no pet.) (citing *Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984); *Pennington v. State*, 345 S.W.2d 527, 528–29 (Tex. Crim. App. 1961)). Although the difference may at times be subtle, while a prosecutor may "ask the jury to be the voice of the community," it may not ask the jury "to lend its ear to the community." *Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984). The former is considered proper because it is a plea for law enforcement. *See Wilson*, 179 S.W.3d at 248.

The State's argument was not improper. Unlike the cases cited by Wood,[8] in which the prosecutors asked their juries to base their verdicts on the unproven expectations of the community, the State in this case asked the jury to be the voice of the community, and then started to recommend a sentence. The State prefaced this argument by discussing the long-term effects Wood's actions would have on his victim, then asked the jury to be the voice of the community by rendering an appropriate verdict. Thus, the argument was a proper plea for law enforcement. *See Wilson*, 179 S.W.3d at 247.

---

[8]The improper arguments in the cases cited by Wood included: "*Now, the only punishment that you can assess that would be any satisfaction at all to the people of this county would be life [imprisonment]*." *Cortez*, 683 S.W.2d at 420 (alteration in original); "Your community demands the maximum." *Curtis v. State*, 640 S.W.2d 618 n. 4 (Tex. Crim. App. 1982); "The people of Nueces County expect you to put this man away." *Pennington*, 345 S.W.2d at 528; and "The eyes of Comanche County are upon you. Look at this crowd in this court room, and a crowd has been here all during this trial. The will and wish of every law abiding citizen of Comanche County wants a verdict of death." *Hazzard v. State*, 15 S.W.2d 638, 639 (Tex. Crim. App. 1929) (per curiam).

Since the State's argument was not improper, we find the trial court did not err in overruling Wood's objection. We overrule this issue.

*(5)*    *Wood Forfeited any Error Regarding Admission of Sally's Recorded Forensic Interview*

Wood also complains that the trial court reversibly erred by admitting a recording of Sally's forensic interview, even though Sally testified at trial. At trial, Wood objected to the admission of the recording as hearsay. The State responded that it was a prior consistent statement offered to rebut a charge of recent fabrication and that it was not hearsay. *See* TEX. R. EVID. 801(e)(1)(B). The trial court agreed and admitted the recording under Rule 801(e)(1)(B) of the Texas Rules of Evidence.

Although Wood acknowledges that the trial court admitted the recording under Rule 801(e)(1)(B), he provides no analysis of why the trial court's ruling was erroneous, other than the cryptic statement that the "ruling is incorrect." Wood cites no case authority in support of that statement. Rather, Wood argues that the recording was not admissible under Article 38.071 of the Texas Code of Criminal Procedure.[9] Wood does not contend, and cites no authority that holds, that a recording that would not be admissible under Article 38.071 would also not be admissible under Rule 801(e)(1)(B).

Appellate counsel is required to "cite specific legal authority and to provide legal argument based on that authority." *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (citing *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992)); *see* TEX. R. APP. P. 38.1(i). Where

---

[9]*See* TEX. CODE CRIM. PROC. ANN. art. 38.071 (West Supp. 2018) (admit into evidence recording of oral statement of child younger than thirteen years of age who is unavailable to testify in presence of defendant).

19

adequate briefing is not provided, the contention may be overruled. *Rhoades*, 934 S.W.2d at 119; *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). Since the trial court admitted the recording under Rule 801(e)(1)(B), and since Wood has provided no argument or relevant legal authority that demonstrates any error in the trial court's reliance on Rule 801(e)(1)(B), Wood has forfeited this issue.[10] We overrule it.

*(6)     Entering the Nunc Pro Tunc Order Was Not Error*

Wood also complains that the trial court erred in signing a nunc pro tunc judgment without notice or the opportunity to be heard. The trial court's original judgment, entered on October 17, 2018, stated, "Sex Offender Registration Requirements do not apply to the Defendant" and that the age of the victim at the time of the offense was "N/A."[11] On December 6, 2018,[12] the trial court granted the State's motion to enter nunc pro tunc judgment and entered its order stating that the "[j]udgment should read: Sex Offender Registration Requirements do apply to the defendant. The age of the victim at the time of the offense was five." Wood argues that the trial court violated his right to due process by entering this order without notice or an opportunity to be heard.

A person who has a reportable conviction or adjudication must register as a sex offender, among other things. TEX. CODE CRIM. PROC. ANN. art. 62.051(a) (West 2018). A conviction for

---

[10]Even if this issue had not been forfeited, Wood was not harmed by the admission of the recording into evidence. We must disregard any error that does not affect the defendant's substantial rights. TEX. R. APP. P. 44.2(b). Where, as in this case, the victim testifies, and the recording is cumulative of the victim's testimony, the appellate courts generally disregard the error since the improperly admitted evidence could not have affected the defendant's substantial rights. *Dunn v. State*, 125 S.W.3d 610, 615 (Tex. App.—Texarkana 2003, no pet.); *Jensen v. State,* 66 S.W.3d 528, 537 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) (op. on remand).

[11]The trial court did not mention sex-offender registration in its pronouncement of Wood's sentence.

[12]Wood filed a motion for new trial on November 14, 2018.

20

continuous sexual abuse of a young child is included in the definition of reportable conviction. TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(A) (West 2018). Therefore, Wood is required to register as a sex offender.

Additionally, if the conviction is for an offense for which sex-offender registration is required, the judgment of conviction must contain "a statement that the registration requirement . . . applies to the defendant, and a statement of the age of the victim of the offense." TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1(27) (West 2018). Since the trial court is required by statute to include a statement that the sex-offender registration requirement applies to the defendant and a statement of the age of the victim, the trial court has no discretion to do otherwise. *Dewalt v. State*, 417 S.W.3d 678, 690 (Tex. App.—Austin 2013, pet. ref'd). "[T]he failure of the trial judge to do so [is] not an error of judicial reasoning but rather an error of a clerical nature." *Id.* (quoting *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988)). Clerical errors in the judgment may be corrected by a nunc pro tunc judgment. *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988).

Nevertheless, Wood asserts that the trial court denied him due process by failing to give him an opportunity to be heard, citing *Guthrie-Nail v. State*, 506 S.W.3d 1 (Tex. Crim. App. 2015). In *Guthrie-Nail*, the Texas Court of Criminal Appeals acknowledged that due process requires that, when a nunc pro tunc judgment or order is unfavorable to the defendant, he must have an opportunity to be heard. *Id.* at 2 n.1 (citing *Shaw v. State*, 539 S.W.2d 887, 890 (Tex. Crim. App. 1976)). In *Guthrie-Nail*, the trial court entered a deadly-weapon finding in a nunc pro tunc judgment, even though it had not included a deadly-weapon finding in its original judgment and

21

had not mentioned a deadly weapon in its pronouncement of Guthrie-Nail's sentence. *Id*. at 3. Since a deadly-weapon finding was not a clerical error, but required an express determination by the trial court, and the deadly-weapon finding had an adverse effect on Guthrie-Nail's parole eligibility, the trial court erred in not giving her an opportunity to be heard. *Id*. at 3–5.

*Guthrie-Nail* does not address whether due process requires that the defendant have an opportunity to be heard when the nunc pro tunc judgment or order corrects a clerical error and has no adverse effect on the defendant. We need not decide this issue, however, since no trial court error in entering the order without a hearing could have affected Wood's "substantial rights." TEX. R. APP. P. 44.2(b). As we previously noted, the inclusion of the statement that the sex-offender registration requirement applies to Wood and the statement regarding the victim's age in the judgment are statutorily mandated and nondiscretionary. Further, since Wood has a reportable conviction, Article 62.051(a) of the Texas Code of Criminal Procedure requires him to register as a sex offender, irrespective of whether the written judgment correctly states that the sex-offender-registration requirement applies to him. Therefore, any error by the trial court did not affect Wood's substantial rights and must be disregarded.[13] We overrule this issue.

---

[13]Wood also faults the trial court for not including the sex-offender registration in its pronouncement of his sentence. Wood argues that, since the oral pronouncement of the sentence controls over the written judgment, any nunc pro tunc judgment must comply with the oral pronouncement. "The sentence is that part of the judgment . . . that orders that the punishment be carried into execution." TEX. CODE CRIM. PROC. ANN. art. 42.02 (West 2018). However, Wood's argument is based on the faulty assumption that the sex-offender-registration requirement is part of his punishment. The sex-offender-registration requirement is not a form of punishment. *White v. State*, 988 S.W.2d 277, 279 (Tex. App.—Texarkana 1999, no pet.). The sex-offender-registration requirements are "civil and remedial in nature," and are not a "criminal sanction." *Rodriguez v. State*, 93 S.W.3d 60, 79 (Tex. Crim. App. 2002). Therefore, those requirements were not required to be part of the trial court's pronouncement of the sentence.

For the reasons stated, we affirm the trial court's judgment.


                                        Josh R. Morriss III
                                        Chief Justice

Date Submitted:     February 14, 2019
Date Decided:       April 12, 2019

Do Not Publish